UNITED STATES of America, Appellee,

v.

Robert J. LANE, Appellant.

No. 1378, Docket 77–1082.

United States Court of Appeals,
Second Circuit.

Argued June 15, 1977.

Decided Aug. 8, 1977.

George P. Doyle, Buffalo, N. Y. (Doyle & Denman, Buffalo, N. Y., of counsel), for appellant.

Gerald J. Houlihan, Asst. U. S. Atty., Rochester (Richard J. Arcara, U. S. Atty. W. D. N. Y., Buffalo, N. Y., of counsel), for appellee.

Before SMITH and OAKES, Circuit Judges, and BRYAN,* District Judge.

OAKES, Circuit Judge:

Appellant, a Buffalo, New York, lawyer, was convicted after a jury trial before the United States District Court for the Western District of New York, Harold P. Burke, *Judge,* of willful failure to file timely federal income tax returns for the years 1965, 1966 and 1967, in violation of 26 U.S.C. § 7203. He appeals his conviction solely on the basis that he was deprived of a speedy trial. We affirm the conviction, for which appellant has been fined a total of $2,000.

Appellant filed his 1965 and 1966 returns, due in May, 1966, and June, 1967, respectively, on October 29, 1968, one month after his first interview with an Internal Revenue Service (IRS) special agent, and his 1967 return, due in May, 1968, on April 16, 1969. Between September, 1968, and May, 1970, the IRS special agent and appellant met twelve times to discuss his 1965–67 returns. In June, 1970, with counsel present, appellant was informed that criminal charges were being contemplated. Over the next year and one-half, appellant and his counsel attended several conferences with Government personnel, many of which were requested by appellant, culminating in a conference in Washington, D. C., in December, 1971. The indictment was returned on February 17, 1972.

Following appellant's arraignment on the day the indictment was returned, Buffalo's two federal district judges recused themselves, and the case was assigned to Judge Burke in Rochester. On March 22, 1972, the Government filed a motion "to move action for trial," which was followed on May 5 by a Government motion to have the court set a trial date. On May 24, after a trial date had apparently been set, appellant's defense counsel requested a continuance until the end of June. Judge Burke then set a September trial date, but appellant's counsel requested a series of continuances, first to October, then to November, then to December, 1972, or January, 1973. At this point the United States Attorney wrote Judge Burke, expressing a desire to go to trial on January 2, 1973. For reasons that are not clear, no trial was set near that date; in October, 1973, the Government moved to fix a trial date, which was then set for November. At that time it appears that appellant's counsel sought and was granted an indefinite continuance based on the illness of appellant's wife, who was going to be a defense witness at the trial.

In May, 1974, the Government gave notice of its readiness for trial and again moved that a trial date be set. In early June, however, appellant's attorney became ill, and in August he died. In September the Government moved to discover who would be appellant's new counsel, and in October it moved to set a trial date. At a hearing, Judge Burke indicated that a mid-January, 1975, trial date was probable. For reasons not explained by any party, trial did not occur at that time and was later set for October, 1975. Appellant at that point moved to dismiss the case for failure to prosecute; Judge Burke denied the motion. At the same time appellant's counsel sought a continuance to the end of October; at the end of October he sought a continuance until late November. In December Judge Burke wrote the parties, scheduling a January, 1976, trial date. Again, the record is unclear as to why trial did not proceed on this date, although it may have been related to illness on the part of Judge Burke. In May, 1976, a hearing was held on the Government's motion to set a trial date, and a June date was fixed. Once again, the record does not disclose why trial did not proceed, but at some point Judge Burke clearly became ill, so that the Government in October moved to have a new judge

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

assigned to the case. No such judge was available, however, and by December Judge Burke had recovered. Following a motion by the Government to set a trial date, trial finally began on December 21, 1976, and two days later the jury returned its guilty verdict.

### Pre-Indictment Delay

In support of the speedy trial claim, appellant first argues that the delay of several years between the initiation of the IRS investigation in 1967 or 1968 and the filing of the indictment in 1972 is "relevant" to his claim of illegal post-indictment delay. See United States v. Vispi, 545 F.2d 328, 333 (2d Cir. 1976). He does not contend that the pre-indictment delay itself violated any of his constitutional or other rights, nor could he in light of United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), United States v. Vispi, supra, 545 F.2d at 331–32, and United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed. 2d 752 (1977), at least in the absence of some showing both of prejudice from the delay and of a Government purpose for the delay that was otherwise than legitimate, see United States v. Lovasco, supra, 431 U.S. at 788–796, 97 S.Ct. 2044, neither of which is alleged here. It appears here, moreover, as in United States v. Vispi, supra, that appellant's "own activities in attempting to dissuade the authorities from prosecuting him [were] a major factor in the [pre-indictment] delay." 545 F.2d at 332.

Appellant does not explain how the pre-indictment delay is relevant to any alleged violation of his rights from the post-indictment delay. In United States v. Vispi, supra, the court held the former relevant to the latter because the Government, which had had several years to investigate prior to the filing of charges, nevertheless was not ready for an immediate trial and delayed the trial in the face of defense requests to proceed. See id. at 333–34. Here the situation is precisely the reverse of that in Vispi. The Government moved the action for trial just over a month after the indictment was filed and thereafter repeatedly stated its readiness to proceed. The defense, by contrast, moved repeatedly for continuances, particularly in the first year following filing of the indictment. In such circumstances, the length of pre-indictment delay has no relevance at all to the legal significance of events that occurred after the filing of the indictment.

### Post-Indictment Delay

Appellant argues that the delay between his indictment in February, 1972, and his trial in December, 1976, violated his rights under rules of the United States Court of Appeals for the Second Circuit and the United States District Court for the Western District of New York, under Fed. R.Crim.P. 48(b), and under the Sixth Amendment to the United States Constitution. We find that none of these provisions were violated by the delay here.

In January, 1971, the Second Circuit adopted "Rules Regarding Prompt Disposition of Criminal Cases," Rule 4 of which provided that "the government must be ready for trial within six months from the date of . . . the filing . . . of a formal charge . . .." Quoted in Hilbert v. Dooling, 476 F.2d 355, 355 n. 1 (2d Cir.) (en banc), cert. denied, 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973). Rule 5 provided that the district court, in computing the six-month period under Rule 4, should exclude, inter alia, any period "resulting from a continuance granted by the district court at the request of, or with the consent of, the defendant or his counsel." Quoted in 476 F.2d at 356 n. 4. These rules were superseded in April 1973, by district court rules, which were in turn superseded in July, 1976, by new district court rules, currently in effect, conforming to the Speedy Trial Act, 18 U.S.C. §§ 3161–74 (Supp. V 1975). The relevant Western District rules between 1973 and 1976 were essentially the same as Second Circuit Rules 4 and 5, quoted above.

We do not believe that any of these rules have been violated here. The Government in this case gave notice of its readiness for

trial in March and again in May, 1972, long before the expiration of six months after the filing of the indictment, and appellant cites absolutely no evidence to support his assertion that the Government's notices were "meaningless," *United States v. Pollak,* 474 F.2d 828, 830 (2d Cir. 1973). Continuances requested by defense counsel were the principal reason for delay in the months following the indictment, with the Government repeatedly moving to set a trial date. Although there are long periods of unexplained delay, appellant makes no showing that the Government was not ready for trial during these periods.

■ With regard to the period after the adoption of the new Western District speedy trial rules on July 1, 1976, the relevant inquiry is whether appellant was tried within 180 days of that date, pursuant to Western District Prompt Disposition Rule 5(a)(1) and the pertinent provisions of the Speedy Trial Act, 18 U.S.C. §§ 3161(c), (g), 3163(b)(2) (Supp. V 1975). Appellant's trial commenced on December 21, 1976, less than 180 days after July 1, 1976. Hence neither Second Circuit nor Western District rules, nor the Speedy Trial Act, were violated by the post-indictment delay in this case.

■ Appellant's second contention is that the indictment should have been dismissed under Fed.R.Crim.P. 48(b), which states that, "if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment." As this court noted en banc in *Hilbert v. Dooling, supra,* the power given the court by Rule 48 was "flesh[ed] out" by the Second Circuit rules, 476 F.2d at 361, then later by the district court rules and ultimately by the Speedy Trial Act and rules issued under it. While the district court retains an " 'inherent power . . . to dismiss a case for want of prosecution,' " *id.* at 360, *quoting* Committee Note to Rule 48, a power that is not circumscribed by the Constitution, the statute, or the rules, *see* 476 F.2d at 361, this power is a discretionary one, *id.* at 358, 361; *United States v. Aberson,* 419 F.2d 820, 821 (2d Cir.), *cert. denied,* 397 U.S. 1066, 90 S.Ct. 1497, 25 L.Ed.2d 687 (1970), with re-

view in this court limited to whether there has been an abuse of discretion, *United States v. Aberson, supra,* 419 F.2d at 821; 3 C. Wright & Miller, *Federal Practice and Procedure* § 814, at 319 (1969). It may be conceivable, although perhaps not likely, that a delay not violative of any court rules or the Speedy Trial Act might nevertheless appear so "unnecessary" that the district court's refusal to dismiss the indictment would be considered an abuse of discretion. Here, however, appellant was responsible for much of the delay, and some of the balance can be explained by such institutional factors as the illness of a judge and the unavailability of a replacement. We find nothing in this record to suggest that Judge Burke's denial of appellant's Rule 48(b) motions was an abuse of discretion.

Appellant's final claim is that the delay violated his Sixth Amendment right to a speedy trial. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court adopted a "balancing test" for evaluation of such claims, under which four factors are to be considered: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192. These factors, the Court noted, "have no talismanic qualities"; none is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533, 92 S.Ct. at 2193. *See also United States v. Companion,* 545 F.2d 308, 311 (2d Cir. 1976) ("the factors are interrelated and must be considered together").

The delay here was quite lengthy—approximately 58 months or just under five years—but nevertheless was shorter than that in other cases in which no Sixth Amendment violation has been found, *see e. g., Barker v. Wingo, supra,* 407 U.S. at 533, 92 S.Ct. 2182 ("well over five years"); *United States v. Saglimbene,* 471 F.2d 16, 17 (2d Cir. 1972) (six years), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2146, 36 L.Ed.2d 686 (1973). There were a number of reasons for the delay, but appellant and his counsel were responsible for much of it with their re-

peated requests for continuances; his first counsel's illness and death were also contributing factors. Some of the delay was caused by institutional factors, particularly the unavailability of another judge when Judge Burke became ill, and such factors, while weighing against the Government, do so less heavily than "deliberate delays or delays related to inexcusable inefficiency," *United States v. Companion, supra,* 545 F.2d at 312 n. 3; *see Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. 2182; *United States v. Roberts,* 515 F.2d 642, 646 (2d Cir. 1975). While the record here contains some rather long unexplained delays, there is no indication that these are attributable either to deliberate procrastination or even negligent inaction on the part of the Government.

The third factor mentioned by the Supreme Court, the defendant's assertion of his right to a speedy trial, weighs heavily against appellant. Rather than "repeatedly and energetically assert[ing] his rights," as in *United States v. Vispi, supra,* 545 F.2d at 334, appellant, like the defendant in *Barker v. Wingo, supra,* apparently "did not want a speedy trial," 407 U.S. at 534, 92 S.Ct. at 2194. He never filed a motion to set a trial date, while the Government filed several, and his many requests for continuances are hardly consistent with a concern for a speedy trial. His two motions to dismiss for failure to prosecute were both filed on the eve of scheduled trials and are indicative of an interest in having the indictment dismissed, rather than of an interest in expediting the proceedings.

Finally, with regard to the fourth *Barker* factor, appellant cites no specific prejudice to himself from the delay. He argues that delay of criminal proceedings is "inherently prejudicial," particularly to an attorney, *see United States v. Vispi, supra,* 545 F.2d at 334–35, but he has not attempted to prove, as had the appellant in *Vispi,* any adverse effect on his morale, his income, his reputation for integrity, or his ability to marshal a defense, *see id.* As a lawyer he should have been aware from his very omission to file returns and certainly from his first visit by an IRS special agent in September, 1968,

that criminal proceedings were a distinct possibility; by June, 1970, he knew directly that they were a probability. Thus he should have readily been able to retain any and all files or documents relative to a defense. Unlike Vispi, whose defense was that he had lost records and as to whom over four years elapsed after conclusion of the IRS Intelligence Division investigation before indictment, appellant made no showing of prejudice. Taking all of the *Barker v. Wingo* factors into account along with the total context of this case, we find no violation of appellant's Sixth Amendment rights.

Judgment affirmed.