**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Louis CARINI, Defendant-Appellant.**

**No. 1423, Docket 77–1167.**

United States Court of Appeals, Second Circuit.

Argued July 21, 1977.

Decided Aug. 30, 1977.

David G. Larimer, Rochester, N. Y., for defendant-appellant.

Gerald J. Houlihan, Asst. U. S. Atty., Rochester, N. Y. (Richard J. Arcara, U. S. Atty., W.D.N.Y., Rochester, N. Y., of counsel), for plaintiff-appellee.

Before WATERMAN and MESKILL, Circuit Judges, and COFFRIN, District Judge.*

WATERMAN, Circuit Judge:

This is an appeal from a judgment order of the United States District Court for the Western District of New York, Burke, J., convicting appellant Carini, following a jury trial, of having violated 26 U.S.C. § 7512(b) by failing to deposit, into a trust account, taxes which had been withheld from the paychecks of employees of Carini Construction Company, a corporation of which Carini is president. There are only two issues raised on appeal here. The first is whether the government's failure to comply with the requirements of the recently enacted Speedy Trial Act, 18 U.S.C. §§ 3161–74, requires or justifies dismissal of the information. If dismissal is not so required or justified under the Speedy Trial Act, we reach the second issue and must decide whether the 34-month delay between the filing of the information and the commencement of trial violated Carini's Sixth Amendment right to a speedy trial. We reach the constitutional question, and we hold that Carini was deprived of his Sixth Amendment right to a speedy trial and, as a consequence, the information against him must be dismissed with prejudice.[1]

The ten-count information which initiated this case was filed on March 15, 1974. Carini was arraigned ten days later, on March 25, 1974, at which time he pleaded "not guilty" to each of the counts and was released on his own recognizance. Shortly thereafter, on May 13, 1974, the government moved to have a trial date set. About two weeks later, however, the government advised the district court that plea negotiations were being conducted with the defendant and that there was a possibility of an agreement being reached with him. Under the terms of the contemplated agreement, a guilty plea to misdemeanor tax charges would eventually be entered by Carini's corporation, but not by Carini personally. It was expected that the corporation would satisfy all outstanding tax liabilities and that over a period of time before the agreement was actually consummated Carini, as his part of the bargain, would demonstrate his good faith by a scrupulous compliance with the tax withholding requirements of the Internal Revenue Code. Presumably because Carini expressed an interest in obtaining the obvious benefits to

---

* Hon. Albert W. Coffrin of the District of Vermont, sitting by designation.

1. The government's brief, but not the appellant's, also raises the issue of whether the government failed to satisfy the standards of the Western District of New York's Plan for the Prompt Disposition of Criminal Cases, specifically Rule 5(a) of that plan. Inasmuch as appellant has not advanced any argument that the government failed to comply with the plan, the requirements of which must be followed strictly, see *United States v. McDonough*, 504 F.2d 67 (2d Cir. 1974) (per curiam); *United States v. Flores*, 501 F.2d 1356 (2d Cir. 1974) (per curiam), we do not address the issue.

him of such an arrangement and presumably because the government desired to have Carini make the necessary showing of good faith compliance, the government made no effort to bring the case on for trial. However, in July of 1975, the federal prosecutors in the Western District of New York were forced to withdraw their offer, for, at least as of that time, offers allowing corporations to plead guilty in lieu of similar pleas by corporate officers were not being approved by the Justice Department.

Following the collapse of the contemplated plea bargain, there was little progress in the case. The district court took its usual summer recess in August of 1975 and therefore no progress was made during that month. The only activity in the next month and a half (i. e., from September 1, 1975 through October 14, 1975) was the government's motion, made on September 18, 1975, seeking to have a trial date set. During the next month (i. e., from October 14, 1975 until November 10, 1975) no progress was made because on October 14 and on October 28 the defense had been granted adjournments so that it might prepare and present a motion to dismiss based upon an alleged deprivation of Carini's right to a speedy trial. The hearing on the defendant's motion to dismiss the information was further postponed for another one-half month (i. e., from November 10, 1975 until November 24, 1975) because Judge Burke was hospitalized.

After Carini's motion to dismiss was submitted on November 24, 1975, the matter was taken under advisement and remained *sub judice* from November 24, 1975 until March 3, 1976, a period of slightly over three months. On March 3, 1976, Carini's motion to dismiss the information was denied in an unenlightening decision which reads as follows:

> By motion filed October 28, 1975 the defendant moved to dismiss the indictment [sic]. On November 7, 1975 the government filed its response.

The motion is in all respects denied. SO ORDERED.

For the next two months (i. e., from March 3, 1976 until May 10, 1976) there was no progress in the case. Finally, on May 10, 1976, the government again moved to have a trial date set. At this time the defendant's attorney moved to withdraw from the case, and, shortly thereafter, on May 27, 1976, a new attorney was appointed to represent Carini. When and whether the new attorney was prepared to go to trial is not evident from the record now before us. In any event, the five-month period from June 13, 1976 until November 8, 1976 saw no progress because of Judge Burke's further hospitalizations and convalescences and the court's usual one-month summer recess. The government, however, concerned that it might not meet the Speedy Trial Act December 27, 1976 deadline for trial[2] of this case, moved on October 4, 1976 to have a new judge assigned to hear this and 43 other cases which were then awaiting trial in the Western District of New York. Despite the government's concern and its attempt to instigate some progress, there is no indication that any progress was made from November 8, 1976 until December 13, 1976. On December 13, inasmuch as Judge Burke had resumed his judicial activities, the government, apparently having abandoned its efforts to have a new judge assigned to hear the case, again moved to have a trial date set. Because there were serious scheduling problems resulting from the recent death of Judge Henderson and various disqualifications of Judge Elfvin, who had been the United States Attorney in the district when many of the pending prosecutions had been instituted, the earliest the case could be heard was January 27, 1977. This is when trial did, in fact, commence.

## I

■ It is clear, and indeed the government concedes, that, inasmuch as trial in

---

**2.** December 27, 1976 was the 180th day, *see* 18 U.S.C. § 3161(g), after July 1, 1976, the date on which the Speedy Trial Act time limitations of 18 U.S.C. § 3161(c) began to run "as to all offenses charged in informations . . . filed prior to [July 1, 1976]," 18 U.S.C. § 3163(b)(2).

this case did not commence by December 27, 1976 (i. e., 180 days from July 1, 1976) there was a violation of the Speedy Trial Act. *See* 18 U.S.C. §§ 3161(g), 3163(b)(2). Yet, as the government correctly points out, the mandatory dismissal of the information or indictment which eventually will be required, upon appropriate motion by the defendant, as a sanction for a failure to comply with the provisions of the Act, *see* 18 U.S.C. § 3162(a)(2), is not yet effective, 18 U.S.C. § 3163(c). In the presence of a conceded violation of the Act it might be argued that during the transition period, although dismissal of the information might not as yet be mandated, the imposition of such a drastic sanction lies within the sound exercise of our discretion. The trouble with this plausible approach is that it seems to conflict with an apparent congressional understanding that "no sanction [for violation of the Act itself] is in effect during the phase-in period". H.R.Rep. No. 1508, 93d Cong., 2d Sess. 32 (1974), U.S.Code Cong. & Admin.News 1974, pp. 7401, 7425; *see* H.R. Rep. No. 1508, 93d Cong., 2d Sess. 9, 31 (1974). We thus conclude that the violation of the Speedy Trial Act is not, in and of itself, a sufficient reason for dismissing the information here. This is not to say, however, that there are not *other* reasons justifying the dismissal of the information. Indeed there are, for the Speedy Trial Act, 18 U.S.C. § 3173, expressly establishes rights in addition to, and not in lieu of, those conferred by the Sixth Amendment upon defendants in criminal cases. Moreover, we believe that under the circumstances here the violation of the Speedy Trial Act is a proper factor to be weighed in our analysis of whether Carini was denied his constitutional right to a speedy trial, the issue to which we now turn.

## II

"[T]he right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied." *Barker v. Wingo,* 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). As we have frequently stated,

*see United States v. Vispi,* 545 F.2d 328, 333 (2d Cir. 1976); *United States v. Roberts,* 515 F.2d 642, 645 (2d Cir. 1975); *United States v. Fasanaro,* 471 F.2d 717 (2d Cir. 1973) (per curiam); *United States v. Saglimbene,* 471 F.2d 16, 17 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2146, 36 L.Ed.2d 686 (1973), the usual factors to be evaluated in determining whether the defendant has been denied his Sixth Amendment right to a speedy trial are clearly delineated in *Barker v. Wingo, supra.* Under *Barker,* the four factors which should generally be considered are: (1) the length of the delay; (2) the reason for the delay; (3) whether and when the defendant has asserted his right to a speedy trial; and (4) the prejudice resulting to the defendant from the delay. *Barker v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. 2182. These four factors are the primary components of a "balancing test [which] necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Id.* at 530, 92 S.Ct. at 2192. No one "of the four factors [is, however,] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533, 92 S.Ct. at 2193; *United States v. Vispi, supra* at 333. Rather, and perhaps most critical for purposes of the case presently before us, the four factors "must be considered together with *such other circumstances as may be relevant."* *Barker v. Wingo, supra,* 407 U.S. at 533, 92 S.Ct. at 2193 (emphasis supplied); *accord, United States v. Vispi, supra* at 333. We believe that the case before us now presents such an additional relevant circumstance, namely, the acknowledged violation of the Speedy Trial Act, which, in view of the closeness of the case here, we consider to be pivotal.

The length of the delay here—34 months—is, indeed, disturbing and, although, as emphasized in *Barker v. Wingo, supra,* 407 U.S. at 521, 530–31, 92 S.Ct. 2182 and demonstrated in our own cases, *see United States v. Vispi, supra; United States v. Roberts, supra,* length alone is not dispositive, the length of the delay here does unquestionably "trigger," *see Barker*

*v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. 2182, our review of the three other factors enumerated in *Barker* and our consideration of "such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. at 2193.

▆▆▆ Next to be considered are the reasons for the delay in bringing Carini to trial. We think, on balance, that the great bulk of the 34-month delay here must be assessed against the government. For instance, the initial 16-month delay (i. e., from March of 1974 through July of 1975) must be charged directly to the government. During this period plea negotiations were being conducted and the defendant was being given an opportunity to demonstrate his good faith, and, as we have recently explained in *United States v. Roberts, supra* at 647, when the prosecution enters into negotiations looking toward a plea bargain "in which a defendant's faithful performance of his part of the agreement is made a condition precedent to the prosecution's consent, at the time of pleading, to a reduction in [, or an elimination of,] the charges [, we] reject any notion that a defendant in effect waives his right to a speedy trial by consenting to such an agreement. Thus, if the government wishes to bargain for this condition, it may but it should do so mindful of the risks which it

thereby assumes of dismissed indictments for unconstitutional delay."[3] Moreover, it also seems clear to us that the defendant here, though certainly not by an evil intent on the part of the prosecutors, was misled and lulled into not pressing for trial during this 16-month period because of his justifiable belief that the prosecution had the authority to offer him the attractive plea bargain it was then proposing. Yet, after the offer had been pending for more than a year, the local prosecutor was forced to withdraw it because he had learned that under the Justice Department ground rules he lacked the authority to make such an offer.[4]

▆▆▆ It is clear, furthermore, and the government concedes, that the so-called "institutional" delays here—the lengthy delays occasioned by Judge Burke's illnesses, the court's summer recesses, and the otherwise unexplained inaction of the District Court, caused, no doubt, by an overloaded docket, Judge Elfvin's disqualifications and the vacancy on the District Court bench created by Judge Henderson's death—are properly chargeable against the government under prevailing case law, *see e. g., Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. 2182; *United States v. Lane,* 561 F.2d

3. The government correctly points out that "Title 18 U.S.C. § 3161(h)(2) of the Speedy Trial Act recognizes that delay occasioned by the defendant attempting to demonstrate good conduct is a permissible excludable period." Carini's attempted demonstration of good conduct occurred, however, before July 1, 1976, the date on which the Speedy Trial Act time limitation of 180 days, *see* 18 U.S.C. §§ 3161(g), 3163(b)(2), became applicable to his case. Thus, our conclusion (and the government's concession) that there has been a violation of the Speedy Trial Act is unaffected by 18 U.S.C. § 3161(h)(2). The government does not argue to the contrary but rather appears to suggest that the statutory exclusion should influence our determination of whether certain segments of the *pre-Act* 27-month period of delay (i. e., from March of 1974 to July of 1976) should be assessed against the government when we decide whether Carini's constitutional right to a speedy trial was violated. While the government's argument is somewhat appealing, it is subject to two objections. First, insofar as *United States v. Roberts, supra,* is inconsistent with 18 U.S.C. § 3161(h)(2), we take *Roberts* as

controlling on the constitutional question. Second, even if the statutory exclusion did control and if the technical requirements for obtaining the exclusion were satisfied by the government, the plea proposal was impermissible under Justice Department requirements, thereby rendering the government directly responsible for and chargeable with the entire period of delay occasioned by Carini's attempted demonstration of good faith compliance. *See* note 4 *infra.*

4. It is unclear whether the local prosecutors lacked the authority to make the offer *ab initio* or whether the offer, although consistent with Justice Department policy when originally proposed in the spring of 1974, became impermissible only upon a subsequent change in Justice Department policy. For present purposes, we discern no distinction between the two situations. In either case the defendant, in attempting to demonstrate good faith compliance, was acting in reliance upon a plea bargain offer which could never be consummated.

1075, at 1078 (2d Cir. 1977); *United States v. Vispi, supra* at 333–34; *United States v. Roberts, supra* at 646; *United States v. West,* 164 U.S.App.D.C. 184, 504 F.2d 253, 256 (1974), "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192. While it is equally true that "institutional" delays are not counted as heavily against the government as are delays caused or encouraged by the prosecution for tactical reasons, *e. g., id.* at 531, 92 S.Ct. 2182; *United States v. Lane, supra* at 1079; *United States v. Roberts, supra* at 646, it remains that delays of this sort, which seem to comprise virtually all of the 18 months (i. e., from August of 1975 through January of 1977) of delay following the collapse of the plea bargaining discussions, are chargeable against the government. Thus, most of the nearly three-year delay in bringing Carini to trial must technically be assessed against the government. Finally, we stress that no part of the delay here is attributable to the complexity of the charges against Carini. To the contrary, the length of the delay here is exacerbated by the fact that the case against Carini was, as was the case against the defendant in *United States v. Vispi, supra* at 333, "simple and uncomplicated." See *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. 2182. The government's case was principally documentary in character and was more or less prepared by the time the information against Carini was filed. When it was eventually tried the case took only three days to try, there was only one defendant and there were only a few live witnesses.

We do not think it significant that Carini waited approximately 20 months before claiming that he had been denied his constitutional right to a speedy trial. During most of this time he was operating under the impression, eventually proved to be an erroneous one, that the prosecutor in the Western District of New York had the authority to offer him the attractive plea bargain proposal which had originally been made and pursuant to which Carini was attempting to demonstrate good faith compliance with tax withholding requirements. Moreover, as already discussed, we stated quite clearly in *United States v. Roberts, supra* at 647, that a defendant does not waive his constitutional right to a speedy trial merely by attempting to make such a sustained demonstration of good faith compliance. We also pointed out in *Roberts* that the time that accrues during this period is to be weighed against the prosecution.[5] Within a very short time after it had become apparent here that there was no longer (if there ever were)[6] any opportunity for Carini to avail himself of the attractive arrangement which had been proposed, Carini seasonably began to assert that he had been denied his right to a speedy trial. We find it to be of especial importance that, even after Carini had clearly warned the government that he was not waiving his Sixth Amendment rights, there was an additional 14-month delay, a substantial portion of which was attributable to the government. This additional delay was, it should also be noted, substantially more serious than the five months it took to bring Vispi to trial after he had moved to dismiss the information against him on the ground that he had been denied his right to a speedy trial. See *United States v. Vispi, supra* at 334. While Carini's position is certainly weakened by the fact that Carini, unlike Vispi, *see id.,* had not previously made a motion for an immediate trial, once Carini had clearly raised the issue of his right to a speedy trial the government surely had fair warning that it would be held strictly accountable for the passage of time *after* the motion to dismiss for want of a speedy trial had been made. Finally, as to the 20 months that elapsed before the motion to dismiss was brought, we reiterate that it ill-behooves the government to argue here that the defendant should be considered as having sat on his right to speedy trial during the 16-month plea bargaining period, for if the government had not made

---

5. *See* note 3 *supra.*

6. *See* note 4 *supra.*

a proposal which could never have been consummated, Carini would likely not have been interested and might have asserted his rights at a much earlier date.

Whether, and how, Carini was prejudiced by the delay is not so easily determined. The government makes a persuasive argument here that Carini suffered little, if any, actual prejudice. It points out that, inasmuch as his own character witnesses were completely unaware until a few days before trial that Carini had been charged with criminal conduct, Carini's reputation in the community was apparently not damaged by the pending criminal charges. At no point was Carini incarcerated. Carini's business, it is true, encountered financial difficulties while the charges against him were pending, but, as the government asserts, these problems, in contrast to the pecuniary harm to the defendant-attorney in *United States v. Vispi, supra* at 334–35, seem more likely to be traceable to the existing public knowledge of the underlying financial instability of Carini's business than to any public awareness of the criminal charges then pending against him.

Carini argues, however, that there were specific ways in which he was prejudiced. Although he does not claim that the significant delay was intentionally nurtured by the government to allow it to gain a tactical advantage over him, Carini does argue that his sole defense at trial, like Vispi's "lack of willfulness" defense in *United States v. Vispi, supra* at 335, was harmed by the inordinate delay. Specifically, Carini, relying upon 26 U.S.C. § 7215(b)(2), defended at trial on the ground that his failure to make the required bank deposits was "due to circumstances beyond his control." Those circumstances were that numerous judgments (seventeen in addition to the IRS action against him), attachments and restraining orders destroyed any actual control he might have had over the bank accounts from which he would have paid the withholding taxes he owed the government. Thus, he argues, he was incapable of making the special bank deposits the IRS

was requiring of him. The long passage of time between the time of these transactions and the time of trial had, however, made it considerably more difficult for Carini to recall all the details of the myriad legal proceedings which had been instituted against him at about the time the IRS was actively pursuing him. Carini's argument, while not entirely unpersuasive, is fairly weak, because here, unlike the situation in *Vispi*, the information was filed a short time after the crimes were committed while the facts were still fresh in Carini's mind and Carini seemingly would have begun at that point to develop his defense by committing to writing the various "circumstances" which he claims made it impossible for him to pay over to the government the taxes he had withheld from his employees.

 In further support of his claim that he was harmed by the long delay, Carini urges, and we can safely accept the statement, that he suffered the "anxiety [arising from] a public accusation of criminal conduct," *United States v. Vispi, supra* at 335, which constitutes, as we have stated, "substantial harm of [a] type which the Sixth Amendment was intended to remedy." *Id.* at 334.

 While we think, on the whole, that the showing of prejudice here is not particularly strong, we believe that the other three factors enumerated in *Barker* lean generally against the government. The delay was a patently long one and it was largely chargeable to the government. Even if we were to disregard the time during which a mutually agreeable termination of the case remained a possibility,[7] much of the delay occurred *after* the defendant had forthrightly begun to assert his right to a speedy trial. Yet, despite the fact that these three factors favor appellant, we would hesitate without an additional factor to conclude only on the basis of the factors set forth in *Barker* that Carini was denied his constitutional right to a speedy trial. What tips the scales in appellant's favor is the conceded violation of the

7. *See* note 3 *supra.*

Speedy Trial Act resulting from the failure to have Carini's trial commence by December 27, 1976.[8] Although the deadline was exceeded by only thirty-one days, the resulting violation of the Act, which might otherwise seem inconsequential, assumes much greater importance when those thirty-one days are viewed against the pre-existing background of protracted delay directly or constructively chargeable to the government. The violation of the Act was clearly foreseen, yet, despite the significant prior delays and Carini's timely invocation of his Sixth Amendment rights, the violation was permitted to occur.

The judgment of conviction is reversed and the case is remanded with instructions to dismiss the information with prejudice.

**8.** This factor, among others, renders the situation here readily distinguishable from that before us in another recent case arising out of the Western District of New York, *United States v. Lane*, No. 77–1082, 561 F.2d 1075 (2d Cir. 1977). There, we rejected a defendant's claim that he had been deprived of his constitutional right to a speedy trial. The most significant distinction between *Lane* and the case now before us is that, inasmuch as Lane's trial had commenced on December 21, 1976, we found there that he had not been denied any of his rights under the Speedy Trial Act. *Lane* is also distinguishable in other important ways. For instance, none of the delay there was attributable, as was a significant portion of the delay here, to the defendant's attempt to comply with an unfulfillable plea bargain offer extended by the prosecution. *Lane* also differs from the case before us in that, although it is true that Carini was responsible for some of the delay in bringing him to trial, Lane "and his counsel were responsible for *much of* [*the delay* there] with their repeated requests for continuances". *United States v. Lane*, No. 77–1082, 561 F.2d 1075 at 1078 (2d Cir. 1977) (emphasis supplied).