Michael GEORGIADIS, Petitioner,

v.

SUPERINTENDENT, EASTERN COR-
RECTIONAL FACILITY; NAPANOCK,
NEW YORK, Respondent.

No. 77 Civ. 1807 (CHT).

United States District Court,
S. D. New York.

April 27, 1978.

Warner & Gillers, P.C., New York City, for petitioner; Kenneth E. Warner, Ronald E. DePetris, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for respondent; David L. Birch, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

This petition for a writ of habeas corpus is brought by a New York state prisoner serving a sentence imposed after a conviction entered upon a plea of guilty to assault in the second degree. Petitioner entered his plea while maintaining his innocence pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The Appellate Division affirmed the judgment of conviction without opinion, *People v. Georgiadis*, 55 A.D.2d 513, 389 N.Y.S.2d

211 (1st Dep't 1976), and leave to appeal to the Court of Appeals was denied. 41 N.Y.2d 866, 397 N.Y.S.2d 792, 362 N.E.2d 631 (1977). Petitioner alleges that a delay of approximately 54 months between his arrest and plea violated his right to a speedy trial under the sixth and fourteenth amendments. For reasons stated below, the petition is denied.[1]

■ In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), the Supreme Court identified four factors which courts are to consider in determining whether there has been a denial of the right to a speedy trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* also makes clear that no one factor is controlling since they "have no talismanic qualities; courts must . . . engage in a difficult and sensitive balancing process." *Id.* at 533, 92 S.Ct. at 2193. Petitioner was arrested on July 14, 1971, and was indicted on August 18, 1971, for attempted murder and felonious possession of a weapon. Between August and January 1972 there were court appearances at which the defense and prosecution stated they were ready for trial. On two occasions, however, defense counsel was engaged on another trial. Between January and February 1972 there was a change of defense counsel, and in February new counsel was given time to make motions. During the period from February to April the case was adjourned a number of times. Although no reasons appear from the record for two of these adjournments, on one occasion the defense failed to appear in court and on another occasion defense counsel was engaged on another trial. In April 1972 petitioner filed an omnibus pretrial motion seeking a bill of particulars and discovery and requesting that the district attorney's demand for notice of alibi be stricken or that the district attorney be required to provide reciprocal discovery of prosecution witnesses. A decision was rendered in June which denied notice of prosecution witnesses, directed petitioner to comply with the demand for notice of alibi, granted the request for a bill of particulars and ordered other discovery "at least thirty (30) days prior to trial." A. 42.[2] Petitioner filed a notice of alibi in August 1972. Motions were before the court between September and November concerning exoneration and reinstatement of bail. Between November 1972 and December 1973 there were a number of dates for appearances. The record does not reveal the reason for six adjournments, although petitioner asserts that the assistant district attorney was involved in another homicide prosecution. The record does show, however, that on at least six occasions the defense failed to appear, that on two occasions defense counsel was engaged in another case, and that four adjournments were by consent.

---

1. The Court has before it the appendices submitted on the appeal to the Appellate Division which include the transcript of the record made at the *Alford* plea hearing wherein both sides had the opportunity to and did present the relevant facts concerning the procedural history of the case. The Court also has copies of the various motion papers filed in the state courts and copies of the briefs submitted to the Appellate Division. Petitioner here does not appear to dispute the facts as presented in the state courts and does not argue that the record is incorrect. The record of the procedural events made at the *Alford* plea hearing was not materially supplemented on the appeal, and petitioner makes no claim here of additional matter. Under these circumstances, the Court finds a hearing on this petition unnecessary. *See United States ex rel. Spina v. McQuillan*, 525 F.2d 813 (2d Cir. 1975); *Glucksman v. Birns*, 398 F.Supp. 1343, 1349 (S.D.N.Y.1975).

2. The Court has determined the progress of this case from the transcript of the proceedings before Justice Leff in the New York County Supreme Court, where petitioner entered his guilty plea, from the briefs and appendices filed in the Appellate Division and from the memoranda filed with the instant petition. References to Petitioner's Memorandum in Support of Application for Writ of Habeas Corpus are preceded by "P"; those to the Appellant's Appendix submitted to the Appellate Division are preceded by "A"; those to the Supplemental Appendix submitted to the Appellate Division are preceded by "SA"; those to the Brief for the Defendant-Appellant in the Appellate Division are preceded by "B"; those to the Brief for Respondent in the Appellate Division are preceded by "R".

In November 1973 a new assistant district attorney was assigned to the case. During this time, "petitioner sought to convince the district attorney to investigate the case and dismiss the charges." P. 4. The district attorney decided to proceed to trial, and in January 1974, although he had not yet complied with the June 1972 discovery order, he answered ready for trial.

In January 1974 petitioner filed a motion, apparently based on his right to reciprocal discovery, to dismiss the indictment or alternatively to preclude the district attorney's use of evidence relating to the alibi defense.[3] In April the motion was denied, but the district attorney was directed to provide notice of contra-alibi witnesses "not less than 14 days before the trial." A. 53. The case was thereafter adjourned until June for discovery and because defense counsel and the district attorney were both engaged in other cases. In June petitioner moved unsuccessfully to dismiss on the ground that the notice of contra-alibi ordered did not comport with due process. The case was then set for trial for the week of August 19. On that date petitioner applied to the Appellate Division for a writ of prohibition urging that the order for contra-alibi was insufficient and complaining of the assistant district attorney's failure to comply with the June 1972 discovery order and the April 1974 contra-alibi order. The application was dismissed on a jurisdictional ground. The case was then adjourned for alibi discovery; a later adjournment was necessary because the assistant district attorney was on another trial, and a further adjournment was granted because both defense counsel and the assistant district at-

torney were on other cases. Between November 1974 and January 1975 there was no action on the case; petitioner asserts that at some point during this period the second assistant district attorney assigned to the case left the office, and no new assistant was assigned for approximately six weeks. P. 7–8, citing A. 129–30. In January 1975 the case was before a different judge and was adjourned by consent in connection with a motion to dismiss. P. 7. Petitioner moved in February to dismiss "in the interest of justice," asserting that the district attorney had failed to comply with the order for notice of contra-alibi, had failed to file a bill of particulars or fully comply with the other discovery, and that actual prejudice had resulted in that potential alibi witnesses could not be located. A. 9–10. In the April response to that motion the district attorney furnished the bill of particulars and asserted an intention to comply with the court orders within the time specified therein. A. 11–12. Thereafter, petitioner's motion was denied by the court but the district attorney was ordered to comply with the court orders within ten days. A. 15. For reasons not revealed by the record, the case was adjourned until June, when dismissal on speedy trial grounds was sought and denied. S.A. 4–9. The case was then adjourned again, although the reasons are not revealed by the record. In October the case was further adjourned, apparently because the assistant district attorney assigned to the case was on another trial. In November the district attorney answered ready, but the case was adjourned because defense counsel was on another case.[4] In

3. The January 1974 motion was made after the Supreme Court decision in *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), which held that a requirement for unilateral defense disclosure of alibi violated due process. Petitioner here asserts that in his reply affirmation to that motion he "put the district attorney on notice of his concern that the delay in prosecution had prejudiced his case." P. 6. He asserts that the dismissal was sought "in part '[b]ecause the prosecution has been pending for such an extended period of time.'" *Id.* (quoting A. 61). However, in that motion petitioner made no demand for a speedy trial nor did he mention his right to a

speedy trial. The papers filed with the motion contained no allegations of prejudice and petitioner was apparently concerned solely with the due process right to reciprocal discovery. There is nothing in the papers to show a concern for the kind of prejudice material here.

4. The record is in conflict as to another adjournment in November, with each side asserting that the other was engaged in another trial. It is unnecessary to resolve this point as petitioner here does "not contend that the delay from November 1975 until January 1976 . . . should be charged against the state." P. 22 n.**.

December the case was adjourned at the petitioner's request. In January 1976 petitioner renewed his speedy trial motion; after it was denied he entered his plea of guilty to the reduced charge.

■ In examining a speedy trial claim, courts employ "a balancing test, in which the conduct of both the prosecutor and the defendant are weighed." *Barker, supra,* 407 U.S., at 530, 92 S.Ct., 2192. In *United States v. Carini,* 562 F.2d 144 (2d Cir. 1977), the court of appeals found a speedy trial violation when faced with a 34–month delay. There, most of the delay, including that occurring after the defendant asserted his right to a speedy trial, was chargeable against the government, and the defendant's failure to assert his right for a 16–month period was directly attributable to the prosecutor's plea offer which failed to materialize due to the later disapproval of the Justice Department. The court conceded that the showing of prejudice was not "particularly strong," *id.* at 151, but found that the additional circumstance of an admitted violation of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1976), which, if in effect, would have required dismissal, weighed heavily against the government and justified a finding of a denial of the right to a speedy trial. In *United States v. Fay,* 505 F.2d 1037 (1st Cir. 1974), the court found a violation when a nine-month delay was not satisfactorily explained and the prejudice alleged was the loss of a potential. witness who it was conceded had been present during the events and who had related to defense counsel a version of the facts leading up to the defendant's arrest different from that asserted· by the government.

Other courts, however, upon balancing the relevant factors have refused to find a violation although faced with longer delays. In *Barker v. Wingo, supra,* the delay had been over five years and was not validly justified by the state. The Supreme Court considered the minor lapses of memory which had occurred not significantly prejudicial and found in particular that the de-fendant's failure to assert his right and to object to continuances militated against finding that the speedy trial right had been violated. Similarly, in *United States v. Lane,* 561 F.2d 1075 (2d Cir. 1977), the court of appeals found no violation although the delay there was approximately five years. While there were institutional factors which weighed against the government and also periods of unexplained delay, the court found that the defendant had not demonstrated specific prejudice and that defense requests for continuances contributed to the delay.

■ On this petition, application of the balancing test begins with a consideration of the length of the delay. Although this factor is not controlling, it may "trigger" an inquiry into the other relevant factors. *See Barker v. Wingo, supra,* 407 U.S., at 530, 92 S.Ct. 2182. Here, the fact that the delay extended over some 54 months clearly mandates a further inquiry concerning the conduct of the parties and the prejudice that may have resulted. *See United States v. Carini, supra,* 562 F.2d at 148–49; *United States v. Seafarers Int'l Union,* 343 F.Supp. 779, 787 (S.D.N.Y.1972).

■ In seeking to justify the delay outlined here, the state offers no explanation other than to assert that it was caused by the defense. Such an argument is not persuasive in the first instance because a "defendant has no duty to bring himself to trial." *Barker v. Wingo, supra,* 407 U.S., at 527, 92 S.Ct. at 2190. Moreover, the state cannot absolve itself of its duty simply by asserting that trial was delayed by defense action when that action was made necessary, at least in part, by the state's own inaction in failing to comply with discovery orders. Furthermore, defense action does not account for the entire delay here—there are a number of adjournments that remain unexplained by the state. On the other hand there are no facts presented on this petition or in the other papers before the Court to support an assertion that the state's inaction was "[a] deliberate attempt

to delay the trial in order to hamper the defense." *Id.* at 531, 92 S.Ct. at 2192. Under the circumstances shown here the Court must recognize that "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily" against the government than a deliberate attempt to delay. *Id.* Still, the responsibility for these unexplained delays should rest with the state. *See United States v. Lane, supra,* 561 F.2d at 1078–79; *United States v. Roberts,* 515 F.2d 642, 646 (2d Cir. 1975); *Morris v. Wyrick,* 516 F.2d 1387, 1390 (8th Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975).

▮ Petitioner is similarly unwilling to take responsibility for the total delay here, asserting that most of it was a result of petitioner's efforts to obtain discovery necessitated by the state's failure to comply with court orders for that purpose.[5] However, a review of the record indicates that petitioner did contribute to the delay. Defense counsel made various motions, requiring time for both sides to prepare, and engaged in numerous consent adjournments, some of which were attributable to counsel's engagement in other cases. It is also to be noted that the defense sought further investigation by the district attorney with an aim toward having the indictment dismissed and, after the state decided to proceed with prosecution, then moved to dismiss for failure to comply with the discovery order or to preclude the use of contra-alibi evidence.

▮ A factor particularly relevant to the determination here is a defendant's assertion of his right to a speedy trial. Although failure to assert this right will not act as a waiver, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo, supra,* 407 U.S., at 532, 92 S.Ct. 2182, at 2193, *accord, United States v. Dornau,* 356 F.Supp. 1091, 1096 (S.D.N.Y. 1973). The petition before the Court does not allege that petitioner demanded a speedy trial.[6] Furthermore, petitioner did not clearly express concern over the length of the delay until the February 1975 motion.[7] In fact, petitioner initiated the further investigation which, at least in part, contributed to the delay, engaged in motion practice, and either sought, consented to or acquiesced in numerous adjournments before and to some extent after his speedy trial motion. Petitioner was not "misled and lulled into not pressing for trial" by action of the prosecutor as was the defendant in *United States v. Carini, supra,* 562 F.2d at 149, and the defense activity does not evidence a strong concern for the right to a speedy trial. *Cf. United States v. Lane, supra,* 561 F.2d at 1079 (defendant's "requests for continuances are hardly consistent with a concern for a speedy trial.

5. Delay attributable to the state's inaction regarding the discovery items and bill of particulars is, as has been indicated, chargeable against the state. However, it does not appear that the failure to supply the information itself contributed to the prejudice claimed here. Petitioner did not assert the need to fashion a new defense and, in fact, maintained that his alibi was established from the beginning of the action. *See United States v. Dornau,* 356 F.Supp. 1091, 1096 (S.D.N.Y.1973) (specific prejudice from the government's failure to file bill of particulars not shown). *But see United States v. Blauner,* 337 F.Supp. 1383, 1390–92 (S.D.N.Y.1971) (early notice of prejudice given; government ignored compliance dates of discovery orders where discovery necessary to development of defense of securities fraud charges and with knowledge of actual and substantial prejudice from the delay). Regarding the state's inaction concerning notice of contra-alibi, petitioner asserts that this "deprived

[him] of the opportunity to determine whether any of the prosecution witnesses would be beneficial to the defense." P. 13. However, the delay in notice of contra-alibi, not ordered until April 1974, does not itself appear to have contributed to the prejudice. Furthermore, although petitioner here characterizes the subsequent compliance with the court orders as less than full, the allegations here are vague, and on the appeal to the Appellate Division petitioner acknowledged that the information was received. *See* B. 8–9, 17; A. 69.

6. In his Appellate Division brief, petitioner alleged that he orally requested a speedy trial sometime during the period between October and December 1971. B. 4. There is no support in the record for this assertion and petitioner has not relied on this allegation in this petition.

7. *See* note 3 *supra.*

His . . . motions to dismiss . . . were both filed on the eve of scheduled trials and are indicative of an interest in having the indictment dismissed, rather than of an interest in expediting the proceedings.").

■ Petitioner claims that the delay substantially prejudiced his defense of the action and led to the decision to plead guilty rather than stand trial. He asserts that his alibi defense was rendered almost valueless by the delay in that two nonfamily alibi witnesses had, in effect, become prosecution witnesses, one nonfamily alibi witness could no longer accurately recall dates, and a nonalibi witness had disappeared.[8] The Supreme Court in *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. 2182, acknowledged that the death or disappearance of defense witnesses and the inability to adequately recall past events are prejudicial. However, considering petitioner's claim, the court is unable to find significant prejudice from the allegations asserted here.

■ Petitioner asserts that the delay prejudiced him in that one of his nonfamily alibi witnesses "when interviewed by the police department [in approximately December 1973], was unable to remember dates." P. 12. Concededly this alleged inability to recall would be detrimental to the defense. But petitioner acknowledges that there were other alibi· witnesses, although he asserts that as they were family witnesses their credibility could thus be attacked. In light of the existence of these other alibi witnesses, the fact that the nonfamily witness might have been a better witness does not seem to justify a finding that the inability to recall dates reaches such magnitude as to be substantially prejudicial.

■ Petitioner also claims prejudice from the discovery that petitioner's alibi was no longer supported by two nonfamily alibi witnesses. This claim is predicated on statements which indicated a time during which petitioner was with the witnesses different from that asserted as establishing the alibi. This claim, however, does not rise to the level of prejudice.[9] Petitioner does not assert that the witnesses were unavailable for trial but simply that their later statements to the police no longer corroborated the alibi. Although petitioner contends that the delay led to an inability to recall accurately the time in question, there is nothing to·indicate that these witnesses, when questioned by the police, were unsure of the facts related. *See* A. 148–50; R. 6; P. 12, 27. Petitioner has not shown how the apparent change of story was attributable to the length of the delay.

■ Because petitioner's ·main claim is that the delay resulted in prejudice to his alibi defense, his additional contention that the disappearance of a nonalibi witness was prejudicial is not significant.[10] The missing witness could not have aided the alibi defense. As asserted by petitioner, this witness's testimony would have reflected adversely on the complainant's credibility and would "have provided a basis for inferring

8. Petitioner's pretrial incarceration of approximately seven months, although mentioned on this petition, is not strenuously urged as a basis of prejudice. Indeed, in the Appellate Division petitioner specifically stated that pretrial incarceration "is not a factor herein as the appellant was released on bail approximately 4 years before this case was disposed of." B. 18. Furthermore, the general statement of petitioner's "anxiety and concern" during the delay, P. 25, is not sufficiently supported. These factors, without more, do "not establish prejudice where . . . the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances." *Morris v. Wyrick,* 516 F.2d 1387, 1391 (8th Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975). Additionally, the failure to early assert this alleged concern and the absence of material reliance on this on the appeal to the Appellate Division militate against giving great weight to the petitioner's anxiety.

9. Petitioner's claim that he was prejudiced by the fact that his brother, one of the family alibi witnesses, changed his story and charged petitioner with having fabricated the alibi is similarly without merit.

10. Petitioner maintains that "but for the deprivation of this alibi testimony, petitioner would surely have gone to trial rather than plead guilty." P. 27. Petitioner similarly urged prejudice to his alibi in the Appellate Division. *See* B. 19.

that someone other than petitioner had a motive and may have shot" the complainant. P. 25.[11] While the testimony of the nonalibi witness may have provided some help to petitioner's case, the witness was not a participant in any of the events in question and was therefore not crucial in terms of the prejudice primarily claimed.[12] *See United States v. Brown,* 354 F.Supp. 1000, 1002 (E.D.Pa.1973) ("the degree of harm must be evaluated in each instance. . . . [T]he death of a character witness whose only testimony would be to show past good reputation cannot be equated with the death of an alibi witness"). *But cf. United States v. Fay,* 505 F.2d 1037 (1st Cir. 1974) (substantial prejudice found where the missing witness had been present at the critical time and had made statements which conflicted with the prosecutor's version of the facts). *See also United States ex rel. Spina v. McQuillan,* 525 F.2d 813, 818 (2d Cir. 1975) (claim that the defense witness had become unavailable was "unconvincing"; the defendant had "never contended that he was prevented in any way from locating or keeping in touch with witnesses").

 Applying the *Barker* balancing test to the circumstances of this case, the Court finds that, while the length of the delay was substantial, petitioner's contribution to the delay, his failure to early assert his right and the lack of serious prejudice weigh in favor of the government.[13] *Cf. United States v. Lane, supra,* (no violation found where defendant failed to show specific prejudice, had contributed to the delay and did not show concern for the right to a speedy trial); *United States v. Fay, supra,* 505 F.2d at 1039 (violation found under the facts there, the court noting that "were the scales as to the other factors more in balance (particularly, were a defendant to have participated in the delay), or were there less corroboration of the criticality and existence of the witness, . . . we would be able to reach a different conclusion"). The Court concludes that petitioner was not denied the right to a speedy trial. Accordingly, the petition is dismissed.

So ordered.

---

11. The witness, a woman, allegedly "would have testified that [complainant] was a gun freak, that [he] told her that three guys had shot him once, and that she was with [him] on two occasions when he went to New York to look for the three guys who had shot him." P. 13, 25. The value of this potential testimony seems, at best, speculative.

12. Prejudice resulting from the loss of this witness is cast somewhat in doubt by the nature of petitioner's reliance on that fact in the state court proceedings. From the transcript of the plea hearing, it does not seem that petitioner relied heavily on the loss of this witness. He stated that the "prejudice . . . had to do with alibi witnesses" and that "[t]here was a circumstance that even went beyond that . . . that had to do with a witness that is now missing who would have served . . . as a rebuttal witness to some of the testimony of the key prosecution witness." A. 72–73. Furthermore, in his brief to the Appellate Division

petitioner did not even assert this as a basis of prejudice.

13. The Court does not consider that additional circumstances warrant a different conclusion. Petitioner asserts that such circumstances are present here and relies on *United States v. Carini, supra,* where a violation of the Speedy Trial Act constituted an additional circumstance requiring dismissal. However, in the April 1975 decision denying petitioner's motion to dismiss, although Justice Leff rebuked the state for its inaction concerning the court orders and himself ordered compliance within ten days, he did not find that dismissal was justified. Petitioner also seeks to have the Court consider the asserted lack of full reciprocal discovery in this case as a denial of due process under *Wardius v. Oregon, supra,* as an additional circumstance. Although petitioner characterizes the lack as a violation, petitioner does not urge this due process claim here. *See* P. 31.