**UNITED STATES of America,
Appellant,**

v.

**Donald F. FERRIS,
Defendant, Appellee.**

**No. 84–1282.**

United States Court of Appeals,
First Circuit.

Argued Oct. 3, 1984.

Decided Dec. 26, 1984.

Thomas J. Drinan, Asst. U.S. Atty., Boston, Mass., with whom Mark L. Wolf, Acting U.S. Atty., Boston, Mass., was on brief for appellant.

Philip R. Berwish was on brief for defendant, appellee.

* Of the Northern District of California, sitting by designation.

Before COFFIN and BOWNES, Circuit Judges, and WEIGEL,* Senior District Judge.

BOWNES, Circuit Judge.

This case involves the dismissal without prejudice of an indictment under the Speedy Trial Act, 18 U.S.C. § 3161. The defendant, Donald F. Ferris, was indicted on two counts of income tax evasion on April 14, 1983, and arraigned on April 29, 1983. Three hundred and twelve days later, on March 5, 1984, the defendant moved to dismiss the indictment for speedy trial violations. The indictment was dismissed on March 27, 1984. The government has appealed.

I.

The pretrial procedural history of this case is quite complex, involving as it does sixteen pretrial motions and five interlocutory appeals. The calculation of excludable time under the Speedy Trial Act requires that we track each motion and appeal from its initial filing to its ultimate resolution. After the defendant's arraignment on April 29, 1983, no further action was taken until May 16, 1983, when the defendant filed five pretrial motions: motion (1) requested discovery; motion (2) asked for dismissal of the indictments; motion (3) asked for a Bill of Particulars; motion (4) asked for exculpatory evidence; and motion (5) requested permission to proceed in forma pauperis. Motion (2) was denied on June 2, 1983, motions (1) and (3)–(5) were decided on June 3, 1983. On June 3, 1983, in motion (6), the defendant again requested the court to dismiss the indictment. This motion was denied on June 7, 1983. On June 13, 1983, a seventh motion was filed requesting clarification of an apparent discrepancy between the oral and written version of the magistrate's decision on motion (5). This motion was decided the next day, June 14, 1983. Four other motions were also filed on June 13, 1983. Motion (8) requested the court to reconsider its denial

of a particular individual as court-appointed counsel. Motion (9) requested that the Assistant United States Attorney in charge of the case, Thomas Drinan, be ordered to recuse himself. This motion charged that the defendant's previous attorney was one of the government's chief sources of information about the defendant's tax situation, and that Drinan had had conversations with this attorney concerning the defendant without the defendant waiving his attorney-client privilege. The defendant also claimed that there could be some prejudice to him stemming from the fact that this attorney had a personal relationship with Drinan's sister. Motion (10) requested that the entire United States Attorney's Office be recused from the case and a special prosecutor be appointed. Motion (11) requested a transcript of the grand jury minutes. Motion (11) was denied on June 16, 1983. Motions (8), (9), and (10) were not decided until March 9, 1984. A twelfth motion was filed on June 16, 1983, requesting hearings on the remaining motions. This motion was denied on August 18, 1983.

On June 17, 1983, the interlocutory appeals began; an interlocutory appeal from the district court's denial on June 2 and June 7, 1983, of motions (2) and (6) to dismiss was filed with this court. A second interlocutory appeal was taken on June 27, 1983, from the district court's denial of motion (11) requesting grand jury minutes. Both these appeals were dismissed by this court for lack of jurisdiction on September 14, 1983, and mandate issued on October 6, 1983. On the same day that the second appeal was filed, June 27, 1983, motion (13) was filed, requesting that the district court vacate its denial of the request for grand jury minutes made in motion (11). This was denied by the district court the next day, June 28, 1983. The denial of motion (13) then became the subject of a third interlocutory appeal, filed on July 8, 1983. This appeal was still pending when, on August 2, 1983, motions (14) and (15) were filed. Motion (14), which asked the court to strike the government's opposition to motion (10), the demand that the entire United

States Attorney's Office recuse itself, was denied on August 16, 1983. Motion (15), which asked the court to strike the government's opposition to the motion to have Assistant Attorney General Drinan recuse himself, was not denied until March 9, 1984. A fourth interlocutory appeal was taken on September 8, 1983, to the denial of motion (14). On the same day, a fifth interlocutory appeal was filed, appealing the denial of motion (12), which had requested a hearing on motions (7)–(10). The fourth and fifth appeals were consolidated with the third appeal and summarily dismissed by this court for lack of jurisdiction on September 27, 1983.

Mandate on these appeals was received by the clerk's office of the district court on October 19, 1983. Because of an administrative slipup, however, the mandate dismissing appeals three, four, and five never made it into the district court's docketing system and the trial judge was not informed that all appeals had been dismissed. Believing that the appeals were still pending, the judge made no attempt to move the case along. In late January 1984 the government became concerned about the possibility of Speedy Trial Act violations and suggested to the court that a status conference be held. At that time, the government learned from the clerk's office that the court did not know that all the interlocutory appeals had been decided. A status conference was promptly scheduled for some time around the end of January or early February. The trial judge, however, became ill on January 27, 1984, and did not return to work until February 23, 1984; the status conference was rescheduled for March 5, 1984. At that status conference the defendant filed a motion for dismissal of the indictment due to Speedy Trial Act violations and the judge learned for the first time that all the appeals had been dismissed. On March 9, 1984, the district court denied the four still pending pretrial motions, (8), (9), (10), and (15). On March 27, 1984, the district court dismissed the indictment because of excess pretrial delay. In response to a government re-

quest for clarification as to whether the dismissal was with or without prejudice, a second memorandum was entered by the court on April 18, 1984, stating that the dismissal was without prejudice.

## II.

We have no problem with the district court's orders of excludable time up to October 19, 1983. As applied to this case, the Speedy Trial Act, 18 U.S.C. § 3161, required that Ferris be tried within seventy days of his arraignment on April 29, 1983, § 3161(c). The Act, however, excludes from the computation of this seventy-day period "delay resulting from any interlocutory appeal," § 3161(h)(1)(E); "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," § 3161(h)(1)(F); and "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," § 3161(h)(1)(J).

Up to September 14, 1983, the district court had made numerous contemporaneous orders finding excludable delays. A nineteen-day period from May 16, 1983, through June 3, 1983, was excluded due to the pendency of motions (1)–(5). The five-day period from June 3, 1983, through June 7, 1983, was excluded due to the pendency of motion (6). The next period of excludable delay extended from June 13, 1983, through June 16, 1983, due to the pendency of motions (7) and (11). Motion (12) provided a sixty-four-day period of excludable delay, from June 16, 1983, through August 18, 1983. Certain parts of this last period were also excluded by the pendency of other concurrent motions: June 27–28, 1983, was excluded because of motion (13) and August 2–16, 1983, was excluded because of motion (14). The last period of excludable delay ordered by the court before the March 1984 status conference was due to the first and second interlocutory appeals and extended from June 17, 1983, through September 14, 1983, a ninety-day period. After the status conference, the period of excludable delay was extended to October 19, 1983, when the mandate on appeals three, four, and five was received by the clerk of the district court.

## III.

Several changes are called for in the calculation of excludable time for the period from October 20, 1983, through March 5, 1984. In its March 27 memorandum on the defendant's motion to dismiss for speedy trial violations and the government's motion for further orders of excludable delay, the district court additionally excluded the period from October 20 through December 29, indicating only that this was justified because motions were pending during this period. For the period December 30—March 5, the district court ruled that the delay was not excludable because the three factors contributing to the delay—the computer docketing error, the prosecution's failure to move the case forward, and the judge's illness—were not reasonably necessary.[1]

1. The district court appears to have been under the misapprehension that the relevant rule for this case was our main holding in *United States v. Mitchell*, 723 F.2d 1040 (1st Cir.1983), that only a "reasonably necessary delay" was permitted between the filing of pretrial motions and the hearing or submission of all necessary papers. *Id.* at 1047. As a result, its analysis of the delay from December 30, 1983, on focused on whether it could be considered reasonably necessary. In fact, the only relevant aspect of *Mitchell* was our dictum in n. 6, *id.* at 1047, indicating that once all papers had been filed and any necessary hearing held, excludable delay would be limited to the thirty-day "under advisement" period of § 3161(h)(1)(J).

The district court also believed that *Mitchell* was not applicable to the period prior to its publication date, December 29, 1983. This was correct in only a very limited sense. In *Mitchell*, we had "invoke[d] our supervisory power to direct that henceforth district courts make specific and reasonably contemporaneous statements of the reasons for any extended exclusions of time between filing and hearing or submission of pretrial motions." *Id.* at 1047. Clearly, this requirement was prospective only. We could not fault district courts for failing to give a contemporaneous statement of reasons with orders of excludable time made before *Mitchell* came down. Our substantive rulings,

We consider first the period from the issuance of our second mandate on the appeals to the time the district court judge became ill: October 20, 1983, through January 26, 1984. In *United States v. Mitchell,* 723 F.2d 1040 (1st Cir.1983), we indicated in a footnote that we would apply the thirty-day limitation on excludable delay for "periods ... during which any proceeding concerning the defendant is actually under advisement by the court," § 3161(h)(1)(J), to the disposition of pretrial motions. *Id.* at 1047 n. 6. In *United States v. Rush,* 738 F.2d 497 (1st Cir.1984), we held that this thirty-day period would begin to run as soon as the district court took the motions under advisement and "cannot be extended without resort to another source of excludable time such as an 'ends of justice' continuance under (h)(8)." *Id.* at 505.

Had there been no interlocutory appeals, motions (8), (9), and (10) would have been considered to be under advisement as of August 19, 1983. On July 1, 1983, the government filed its answers and, on August 18, 1983, the district court denied defendant's request that it hold hearings on these motions. At this point, the exclusion provided by § 3161(h)(1)(F) ended because the court then had everything it needed to make a decision. The matter was then under advisement and the thirty-day exclusion provided by § 3161(h)(1)(J) was triggered. Normally then, these motions would have had to be decided within thirty days of August 19, 1983. In this case, however, interlocutory appeals were filed prior to the "under advisement" date of August 19. The period from August 19 until the date mandate issued denying the appeals, October 19, 1983, was properly excluded as delay resulting from an inter-

locutory appeal under § 3161(h)(1)(E). The question is whether the thirty-day "under advisement" period for the pending motions was postponed until October 20, 1983, by the pendency of the interlocutory appeals.

▮ The district court held that the pendency of the appeals divested it of jurisdiction so that it could not decide these motions: "It is an unfortunate fact of life that the pendency of even a frivolous appeal ousts a district court of jurisdiction to take any substantive action in a case until the Court of Appeals brooms out the frivolous appeal." This point, however, is not as well settled as the district court assumed. While an appeal from an order which is either final or appealable by statute does divest the district court of authority to proceed with respect to any matters involved in the appeal, 9 Moore's Federal Practice ¶ 203.11, 3–44, an impermissible or frivolous appeal does not have the same effect on the jurisdiction of the district court. *Hodgson v. Mahoney,* 460 F.2d 326 (1st Cir.1972). Where the order in question is manifestly unappealable, the court of appeals never gains jurisdiction of it and, consequently, the district court never loses jurisdiction of it. 9 Moore's Federal Practice ¶ 203.11, 3–51—52. In such a case, the district court may ignore the appeal and proceed with the case, "[o]therwise, a litigant could temporarily deprive a court of jurisdiction at any and every critical juncture." *Hodgson,* 460 F.2d at 328.

▮ The district court, therefore, could have gone ahead and decided these motions in August 1983 since the appeals were taken on "patently nonappealable orders." District Court Memorandum of April 18, 1984, at p. 4. We do not think, however,

however, were not prospective only, nor was there any reason to make them so. This was not a case ·in which we overruled established circuit precedent or pronounced a new and novel rule of law. In such cases a prospective only application may be appropriate to avoid injustice or hardship. *Linkletter v. Walker,* 381 U.S. 618, 625, 628, 85 S.Ct. 1731, 1735, 1737, 14 L.Ed.2d 601 (1965). In *Mitchell,* although we dealt with sections of the Speedy Trial Act which we had never previously construed, we

applied no innovative principles to reach our holdings nor did we come up with a radically new result. In such a situation, retrospective application of the newly announced doctrine is appropriate. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 496–502, 88 S.Ct. 2224, 2233–2236, 20 L.Ed.2d 1231 (1968). In fact, in *Mitchell* itself we retroactively applied our new standard, permitting only a "reasonably necessary" delay for exclusion under § 3161(h)(1)(F).

that a party taking frivolous appeals should benefit from them. Therefore, while the district court could and should have taken these motions under advisement in August, its failure to do so did not restart the speedy trial clock. For the purposes of a Speedy Trial Act calculation, the clock stopped running until the interlocutory appeals had been resolved. The thirty-day "under advisement" period, therefore, began on October 20, 1983, when the district court received the mandate from the court of appeals, and ended on November 18, 1983. Consequently, the period from November 19, 1983, through January 26, 1984—the end of the under advisement period to the date the trial judge fell ill—should not have been excluded.

The government argues that it should not be penalized for the delay caused by the failure of the clerk's docketing system to record the dismissal of the interlocutory appeals. While it makes this argument with reference to the district court's ruling that the period from December 30, 1983, through January 26, 1984, was not excludable, clearly, this same argument also applies to the now unexcluded period from November 19 to December 29, 1983. The Speedy Trial Act itself, however, makes no provision for the "equitable" exclusion of time due to administrative foul-ups. Whatever flexibility exists in the Act is provided by the availability of continuances where the ends of justice served by excluding this time "outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(8)(A). In this case, we are not simply confronted with a failure to comply with the technical requirement of obtaining a continuance; the reasons for this delay would not have justified a continuance even had one been requested. We do not see how the ends of justice would be served by allowing a delay of this kind. Administrative negligence is neither desirable nor excusable. The Speedy Trial Act was designed to eliminate as many of these unnecessary delays as possible. If Congress did not consider the "congestion of the court's calendar" to justify a continuance, § 3161(h)(8)(C), surely it could not have intended to excuse administrative error. *See United States v. Angelini,* 553 F.Supp. 367, 369 (D.Mass.1982).

The government also argues that it should not be penalized for the fact that the defendant's recusal motions made it awkward for it to push the trial judge for a decision on the pending motions. It was this inactivity upon the part of the prosecution, combined with the computer docketing system failure, that allowed the district court to remain ignorant of the status of the pending motions. While we recognize that the government may have been in a somewhat delicate position due to the recusal motions, we do not believe that its hands were so completely tied as to justify over three months of inactivity after this court's mandate had issued on the appeals. We can see nothing improper about the prosecutor contacting the clerk to point out that speedy trial considerations suggested a prompt resolution of pending motions. Nor could the government have been thought biased if it filed a motion to this effect. Either approach would have alerted the district court that something was awry.

■ We now turn to the delay caused by the district court judge's illness, January 27 through February 27, 1984, which he held was not excludable. The legislative history of the Speedy Trial Act indicates that the illness of a judge was precisely the kind of situation which would justify a continuance under § 3161(h)(8)(B)(i), *i.e.,* where "the failure to grant such a continuance would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." S.Rep. No. 1021, 93rd Cong., 2nd Sess., *reprinted in* A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974 (Fed.Judicial Center 1980), at 162. This time would clearly be excludable had the court granted a continuance; however, no continuance was formally granted here. Although the Act uses "continuance" in the formal sense of a written order, we think that a relatively short period of delay due to a judge's illness, as here, should be treated as a contin-

uance whether or not a continuance order issues. The delay due to the judge's illness is, therefore, properly excludable time.

■ By our calculation, as of March 5, 1984, when the defendant filed a motion to dismiss for speedy trial violations and permanently stopped the speedy trial clock, more than seventy nonexcludable days had passed from the defendant's arraignment on April 29, 1983.

| | |
|---|---|
| April | 1 day (April 30) |
| May | 15 days (May 1–15) |
| June | 5 days (June 8–12) |
| November | 12 days (November 19–30) |
| December | 31 days (December 1–31) |
| January | 26 days (January 1–26) |
| February | 2 days (February 28–29) |
| March | 4 days (March 1–4) |
| Total | 96 days nonexcludable time |

Due to Speedy Trial Act violations we, therefore, affirm the dismissal of the indictment without prejudice.