363 P.3d 838

STATE of Hawai'i, Respondent/Plaintiff–Appellee,

v.

Scott A. ABREGANO, Petitioner/Defendant–Appellant.

No. SCWC–13–0000401.

Supreme Court of Hawai'i.

Dec. 11, 2015.

As Corrected Dec. 11, 2015.

Titiimaea N. Taáse as attorney for petitioner.

Loren J. Thomas, Honolulu, for respondent.

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, and WILSON, JJ.

## OPINIONS OF THE COURT

### PART I: HAWAI'I RULES OF PENAL PROCEDURE RULE 48

(By: RECKTENWALD, C.J., with whom NAKAYAMA, McKENNA, POLLACK, and WILSON, JJ., join)

The central issue is whether the family court erred in finding that a delay due to the trial judge's illness was excluded as "good cause" from the calculation of the time for commencing defendant's trial under Rule 48 of Hawai'i Rules of Penal Procedure (HRPP).

Defendant Scott A. Abregano was charged with violation of a protective order, under which Abregano was the respondent and his wife, KA, was the petitioner.[1] Before Abregano's trial began, the date of the trial was continued for one month because the trial judge was ill. Although HRPP Rule 48[2] requires that a criminal defendant be tried within six months of the earlier of his or her arrest or indictment, this continuance resulted in Abregano's trial not beginning until March 12, 2013—fourteen days after the six-month period expired. Before trial began, Abregano filed a Rule 48 motion to dismiss, which the family court denied based upon its conclusion that the period of delay due to the trial judge's illness was excluded from the HRPP Rule 48 period because it constituted "good cause" for delay under HRPP Rule 48(c)(8).

We conclude that under the circumstances in this case, the family court erred in finding that the trial judge's illness constituted good cause to exclude one month under HRPP Rule 48. Accordingly, we vacate the judgment on appeal of the Intermediate Court of

---

1. Specifically, Abregano was charged with violating HRS § 586–11 (Supp.2012) which provides, in relevant part: "When an order for protection is granted pursuant to this chapter, a respondent or person to be restrained who knowingly or intentionally violates the order for protection is guilty of a misdemeanor."

2. HRPP Rule 48 (2015) ("Dismissal") provides, in relevant part:

 (b) By Court. Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within six months:

 (1) from the date of arrest if bail is set or from the filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made; or

 (2) from the date of re-arrest or re-filing of the charge, in cases where an initial charge was dismissed upon motion of the defendant; or (3) from the date of mistrial, order granting a new trial or remand, in cases where such events require a new trial.

 Clauses (b)(1) and (b)(2) shall not be applicable to any offense for which the arrest was made or the charge was filed prior to the effective date of the rule.

 (c) Excluded Periods. The following periods shall be excluded in computing the time for trial commencement:

 (1) periods that delay the commencement of trial and are caused by collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which the defendant is incompetent to stand trial, pretrial motions, interlocutory appeals and trials of other charges;

 (2) periods that delay the commencement of trial and are caused by congestion of the trial docket when the congestion is attributable to exceptional circumstances;

 (3) periods that delay the commencement of trial and are caused by a continuance granted at the request or with the consent of the defendant or defendant's counsel;

 (4) periods that delay the commencement of trial and are caused by a continuance granted at the request of the prosecutor if:

 (i) the continuance is granted because of the unavailability of evidence material to the prosecution's case, when the prosecutor has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or

 (ii) the continuance is granted to allow the prosecutor additional time to prepare the prosecutor's case and additional time is justified because of the exceptional circumstances of the case;

 (5) periods that delay the commencement of trial and are caused by the absence or unavailability of the defendant;

 (6) the period between a dismissal of the charge by the prosecutor to the time of arrest or filing of a new charge, whichever is sooner, for the same offense or an offense required to be joined with that offense;

 (7) a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance; and

 (8) other periods of delay for good cause.

Appeals (ICA) and the family court's judgment of conviction and sentence, and remand to the family court to decide whether to dismiss Abregano's charges with or without prejudice. Because this issue is dispositive, we do not address the other issues raised by Abregano in his appeal except as noted below.

## I. Background

### A. Pre-trial Proceedings

On August 30, 2012, Abregano was arrested for violating a protective order. Abregano was charged as follows:

> On or about the 30th day of August, 2012, in the City and County of Honolulu, State of Hawaiʻi, SCOTT A. ABREGANO did intentionally or knowingly violate the Order for Protection issued in FC–DA No. 12–1–6011 on the 17th day of January, 2012 by the Honorable Lanson K. Kupau, Judge of the Family Court of the First Circuit, State of Hawaiʻi, pursuant to Chapter 586 of the Hawaiʻi Revised Statutes, thereby committing the offense of Violation of an Order for Protection in violation of Section 586–5.5 and Section 586–11(a) of the Hawaiʻi Revised Statutes.

Abregano pleaded not guilty and requested a jury trial. The State calculated that the deadline for Abregano's trial under Hawaiʻi Rules of Penal Procedure (HRPP) Rule 48 was February 26, 2013, so the court set Abregano's trial for January 14, 2013. On January 14, 2013 the parties appeared in family court before Judge Jeanette Castagnetti. The State and Abregano both stated that they were ready for trial, and the court scheduled the trial to commence the next day. The parties appeared before the family court on January 15, 2013 and declared they were ready for trial. The court continued the trial until February 11, 2013 "due to court congestion." Neither party objected to this continuance.

On February 11, 2013, the parties appeared before the family court and both declared they were ready for trial. However, Judge Castagnetti continued the trial until March 11, due to her illness:

> As I informed the attorneys earlier during another matter, notwithstanding that both sides are declaring ready for trial, having gone through the part of this morning's calendar call, uh, the court feels that it's not going to be able to proceed to trial this week. It's apparent to me that I'm coming down with a flu bug, and so I'm going to continue this matter due to the court's unavailability for trial this week.
>
> So that means for you, Mr. Abregano, your next calendar call setting will be on March 11th at 8:30.

Although Abregano did not formally object to this continuance, the following exchange occurred between Abregano's counsel and the court:

> [DEFENSE COUNSEL]: And, Your Honor, it is my understanding that you won't make any finding with respect to Rule 48; right?
>
> THE COURT: Correct.
>
> [DEFENSE COUNSEL]: So any objection would not be relevant at this point?
>
> THE COURT: Well, you can—I mean we'll note that both sides are ready. And then, um, obviously there will be no waiver of Rule 48 speedy trial by defense given the circumstances, so we can note that as well.
>
> [DEFENSE COUNSEL]: Thank you, Your Honor.

On March 5, 2013, Abregano filed a "Motion to Dismiss for Violation of HRPP Rule 48, and Speedy Trial." Abregano argued that the Rule 48 six-month period began running on August 30, 2012, the date of his arrest, that six months had already elapsed by March 5, 2013, and that the reasons for continuance beyond the six-month period did not fall into any of the excluded periods provided by Rule 48. Abregano argued that for periods of delay caused by court congestion to be excluded under Rule 48, there must be "exceptional circumstances," which require a showing that the congestion "deviat[ed] from the norm." Abregano argued that such congestion was not present here.

Abregano also argued that the illness of the judge does not constitute "exceptional circumstances," because it is not a "unique,

nonrecurring event." Abregano also contended that delay due to a judge's illness is not "good cause" because it does not amount to a "substantial reason which affords a legal excuse." According to Abregano, his charges should have been dismissed with prejudice.

On March 11, 2013, the parties appeared in the family court.[3] The court heard the parties' arguments on Abregano's motion to dismiss, and denied the motion, ruling that the continuance due to Judge Castagnetti's illness extended the Rule 48 trial deadline by one month to March 26, 2013:

> [DEFENSE COUNSEL]: In this case, Your Honor, this matter came before the court on February 11, 2013. At that time the court continued all the cases because the court was ill. She said she was ill and unavailable. Um, the defense believed that that is not a reason that Rule 48 should be told [sic]. It doesn't fall within any of the exceptions under Subsection 48, 48B or 48C, Your Honor.
>
> THE COURT: Isn't there a catch-all provision?
>
> [DEFENSE COUNSEL]: Good cause? Is that what the court is referring to?
>
> THE COURT: Yes.
>
> [DEFENSE COUNSEL]: Good cause has been defined by the court as, um, I have it in my motion, substantial reason which— substantial reason which affords a legal excuse. And under *State v. Extencion* [sic] the supreme court indicated there's no substantial reason for delay when in that case the State lacked facilities to test the evidence and the crucial report that was missing that was received late and there was a shortage of experienced prosecutors. In this—
>
> THE COURT: Well, is there a case that says the judge being sick is not good cause?
>
> [DEFENSE COUNSEL]: No, Your Honor. But as in this case we have to make a prima facie case indicating that Rule 48— uh, that there was a triggering event where Rule 48 was violated. Then the state has to make, um—has to negate the burden or show—has to meet its burden of indicating that Rule 48 had not yet run. In this case it is not exceptional circumstances. It is not good cause. Merely because one judge in Circuit Court is ill when there are 21 other judges, there are replacement judges. There are, um—
>
> THE COURT: No. I disagree with you one hundred percent. There are no replacement judges. And it's just like you guys. When your client shows up and says I want P.D. Stanley who is my attorney, we routinely continue it so that we can protect the procedural rights of the defendant to say, yes, you have an assigned public defender. The court's going to honor that.
>
> If Judge Castagnetti was sick, she was sick. That's not something that happens every day. I think that's good cause. I'm going to rule March, 26, '13 is the Rule 48 date. So we'll pass this case. Put it in the queue.

The family court then set the trial to commence the next day, on March 12, 2013.

**B. Trial**

Abregano's jury trial commenced on March 12, 2013, with Judge Ochiai presiding. The State presented its opening statement, contending that the evidence would demonstrate that Abregano had violated the protective order by coming too close to his stepdaughter, HP, who was one of the "protected persons" under the protective order, during a softball game in which HP was playing. Abregano, in his opening statement, acknowledged that Abregano's estranged wife (KA), was the "petitioner" under the protective order, and that Abregano was prohibited from coming within 100 feet of KA or 100 yards of KA's work or home.[4] Abregano also con-

---

**3.** The Honorable Dean E. Ochiai presided over this hearing and all subsequent proceedings in this case.

**4.** In section B, titled "contact between parties," the protective order provided that "[t]he respon-

dent is prohibited from coming or passing within 100 <u>yards</u> of any residence or place of employment or school of the Petitioner" and "[t]he Respondent is prohibited from coming or passing within 100 <u>feet</u> of the Petitioner at all other neutral locations." (Emphases added).

tended, however, that the evidence would show that no term of the protective order prohibited Abregano from coming within 100 feet of HP or 100 yards of HP's school or home.

KA testified to the following. On January 17, 2012, KA petitioned for an order of protection in Family Court before Judge Kupau. The protective order designated KA as the petitioner and Abregano as the respondent. HP was also "covered" under the order. When the protective order was issued, Mr. William, a staff member of Adult Client Services, read the order aloud to Abregano. Abregano stated that he did not understand the order, so Judge Kupau read the order aloud, and Abregano then stated that he understood and signed the proof of service.

When, during Abregano's trial, the State questioned KA as to what Judge Kupau had told HP and Abregano about contact between the parties under the protective order, the following exchange occurred:

[STATE]: Okay. Um, what did [Judge Kupau]—what did he tell you and the defendant about contact between parties?

[DEFENSE COUNSEL]: Objection. Hearsay. This is hearsay.

THE COURT: Mr. Prosecutor, does the document not speak for itself? It is in evidence.

[STATE]: All right. Um, then let's specifically address Points 3 and Points 4 in Section 3B—

THE COURT: All right.

[STATE]:—'cause that deals with contact between parties.

[STATE]: [KA], um, Section 3 says "The respondent is prohibited from coming or passing within 100 yards of any residence or place of employment or school of the petitioner. The respondent must not violate this order even if the petitioner invites the respondent over."

[DEFENSE COUNSEL]: Objection. Is that a question?

THE COURT: I think that is part of the question. So overruled at this time.

[STATE]: Do you remember Judge Kupau going over that portion Point 3B3 with you

in open court and the defendant in open court?

[KA]: Yes.

[STATE]: Okay. Now does 3—did he tell you 3B3, that section that I just read to you, does that apply—did he tell the defendant and you that that applies only to you or to—I mean—or to you and the other people covered under the order of protection?

[DEFENSE COUNSEL]: Objection. Hearsay.

THE COURT: Okay. Sustained.

[STATE]: Okay. For the contact between parties section, did Judge Kupau say that it went over—that it covers both—just you or you and the other people on the order for protection?

[DEFENSE COUNSEL]: Objection. Hearsay.

THE COURT: Sustained.

[STATE]: Okay.

THE COURT: Mr. Prosecutor, isn't this covered on Page 1 of Exhibit 1?

[STATE]: Okay.

THE COURT: No, I'm just asking. I don't mean to preempt your questioning, but isn't it covered on Page 1?

[STATE]: Yes. Yes, Your Honor. You are correct.

THE COURT: Well, it's in evidence. If you want to ask her who's covered, I think you can publish that portion of the exhibit which is in evidence if you desire.

[STATE]: Okay. So just to be clear, um, [KA], in addition to yourself as the petitioner that's covered under this order for protection, um, again there's three other people covered under this order; right?

[DEFENSE COUNSEL]: Objection. Leading.

THE COURT: Overruled.

[KA]: Yes.

[STATE]: Okay. So then who are those three people in addition to yourself covered under this order?

[KA]: Uh, my daughter [HP], uh, my son . . . and our youngest daughter. . . .

[STATE]: Okay. Thank you, [KA].

KA testified that on August 30, 2012, KA was at HP's softball game at HP's high school. HP told KA that Abregano was at the game, and then KA saw Abregano, who she estimated was around thirty to forty feet away from where KA was seated. KA then called 911.

HP testified to the following. On August 30, 2012, she was playing in a softball game at her high school. When HP was jogging to the fence, she saw Abregano closer than a football field away from her, and felt nervous, so she told her coach and then KA that Abregano was present. When HP was walking to the bathroom during the game, she heard her name being called and recognized Abregano's voice, although she did not turn to look at who was calling her name.

After HP testified, Abregano moved for judgment of acquittal. Abregano argued that the protective order did not prohibit him from coming to HP's school because HP was not listed as a petitioner but as an additional protected person. Abregano acknowledged that the protective order prohibited him from contacting specifically enumerated persons, which included HP, but argued that whether he had attempted to contact HP was the only issue that should go to the jury. The court denied the motion and made the following ruling from the bench:

> [Defense counsel], I have issued orders for protection myself in the District Court. When I say "other protected persons," they have the same meaning as "the petitioner" in the court's eyes. So—otherwise they would not be listed as "other protected persons." I've had situations in which people came in claiming to be other protected persons but they were not listed on the order for protection as other protected persons, so the court was powerless to do anything about it.
>
> So as far as the court is concerned, other protected persons stand in the same shoes as the petitioner in this case. So if that's your only basis, I'm going to flatly deny the motion for judgment of acquittal.

Abregano also objected to the judge's statements to the prosecutor in the presence of the jury which, according to Abregano, suggested to the jury that the identity of the individuals covered by the protective order was already in evidence on page 1 of exhibit 1. Abregano moved for a mistrial, and the family court denied his motion:

> [DEFENSE COUNSEL]: I do object to the court talking with the prosecutor during the trial and telling him—indicating to him where certain things in the document may be. I do believe in front of the jury when the jury is watching it is prejudicial.
>
> THE COURT: Okay. You have preserved your record. That document—the court was commenting on a document that was already received into evidence.
>
> [DEFENSE COUNSEL]: Yes, Your Honor.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: You did so in front of the jury and you were talking specifically to the prosecutor. And in that case we do believe that that shows that there is some camaraderie between—
>
> THE COURT: Watch yourself. Watch yourself very carefully before you make allegations. The court was facilitating the use of this document for a witness who was on the stand.
>
> [DEFENSE COUNSEL]: I understand, Your Honor, but in front of the jury. The jury was watching that exchange. They were watching you in—I'm sorry, Your Honor. I have to make my record before the record goes up.
>
> THE COURT: You can make your record, but choose your words carefully.
>
> [DEFENSE COUNSEL]: You were—
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]:—talking to the prosecutor while in front of the jury with respect to the order and you were telling where on the order things were. This is specifically prejudicial in this case because the order itself, as you can see our entire defense is that he did not know that HP was a—was a petitioner as HP is not listed. So by the court indicating, oh, it's on Page 1, the first paragraph, the court is telling the jury in addition to the prosecutor that my entire argument (inaudible).

THE COURT: Ms. Stanley, the document speaks for itself. Had you attempted to argue that these people were not protected persons under this order for protection issued by Judge Kupau in your closing argument, I would shut you down to say that is a misstatement of the law and a misstatement of this document even if I had to call Judge Kupau to come in here and clarify this. So don't—

[DEFENSE COUNSEL]: Your Honor, that is—

THE COURT: Don't try to confuse the issue here. This was already in evidence, and the court merely was saying where it is so that questioning of the witness could be facilitated so that we wouldn't be here for two hours groping in the dark to get to the same place. Okay. So—

. . . .

[DEFENSE COUNSEL]: And the defense does move for a mistrial.

THE COURT: Well, that's denied also.[5]

After Abregano testified in his own defense, Abregano again moved for judgment of acquittal, which the court denied.

The jury found Abregano guilty, and the family court sentenced him to two years probation with the conditions of forty-eight hours incarceration, completion of the domestic violence intervention and parenting programs, and compliance with the terms of the protective order. Abregano timely filed a notice of appeal.

## C. Appeal to the ICA

In his appeal, Abregano argued that the family court erred in denying Abregano's Motion to Dismiss for violation of HRPP Rule 48.

Abregano argued that the "good cause" provision under HRPP Rule 48(c) is not a "catch-all" provision, and that the court has a duty of due diligence to ensure that a defendant's trial begins within the six months required by Rule 48. Abregano argued that to constitute "good cause," a reason for delay must be a "substantial reason which affords a legal excuse," and that for court congestion to excuse a delay, there must be "exceptional circumstances" caused by "unique, non-recurring events." Abregano argued that Hawai'i Revised Statutes (HRS) §§ 603-3 and 603-41 require there to be twenty-five circuit court judges in the first circuit, and allow for substitute retired judges or judges from other circuits in the case of court congestion. Therefore, according to Abregano, the lack of findings by the trial court as to why no replacement judges were available to replace Judge Castagnetti during her illness meant the court "failed to fulfill its duty of due diligence" to find a replacement. Abregano also contended that the length of delay resulting from Judge Castagnetti's illness—four weeks—was unnecessarily long.

The ICA affirmed the family court's judgment of conviction. The ICA, relying on two federal cases, *United States v. Lane*, 561 F.2d 1075, 1078 (2d Cir.1977), and *United States v. Ferris*, 751 F.2d 436, 441-42 (1st Cir.1984), held that a trial judge's illness is properly excludable under the "good cause" provision of HRPP Rule 48. The ICA disagreed with Abregano that the family court had any duty of due diligence to find a

---

**5.** Abregano argues in his application for writ of certiorari that the family court's comments were improper and warrant a new trial because they constituted an improper comment upon the evidence. Specifically, Abregano takes issue with the family court's comment that the identity of the persons covered by section III(B)(3) of the protective order was "covered on page 1 of Exhibit 1," since Abregano's defense was that section III(B)(3) did not apply to HP. However, as set forth below, we resolve this appeal on the HRPP Rule 48 issue. We note, however, that judicial comments that may rationally be perceived by a jury as being a comment on the evidence may constitute reversible error. *See* Hawai'i Rules of Evidence Rule 1102 (1993)

("The court shall instruct the jury regarding the law applicable to the facts of the case, <u>but shall not comment upon the evidence</u>. It shall also inform the jury that they are the exclusive judges of all questions of fact and the credibility of witnesses.") (emphasis added). Such errors can be avoided by directing the comment to counsel at the bench or when the jury is not present.

Further, we note that when counsel attempts to make an argument, the court must allow counsel a fair opportunity to state the argument for the record. Here, on more than one occasion, the court appeared to interject and thereby prevented defense counsel from fully expressing her arguments in support of Abregano's motions for acquittal and new trial.

replacement judge, but stated that even if it did, the court in this case made efforts to hear Abregano's case expeditiously.

Abregano timely filed an application for writ of certiorari.

## II. Standard of Review

■ This court reviews a trial court's denial of HRPP Rule 48 motion to dismiss under both the "clearly erroneous" and "right/wrong" tests:

> A trial court's findings of fact (FOFs) in deciding an HRPP 48(b) motion to dismiss are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed. However, whether those facts fall within HRPP 48(b)'s exclusionary provisions is a question of law, the determination of which is freely reviewable pursuant to the "right/wrong" test.

*State v. Samonte,* 83 Hawai'i 507, 514, 928 P.2d 1, 8 (1996) (quoting *State v. Hutch,* 75 Haw. 307, 328–29, 861 P.2d 11, 22 (1993)).

## III. Discussion

Because Judge Castagnetti continued Abregano's trial for one month due to her illness, this court must determine whether that illness constituted an excluded period of delay as "good cause" under HRPP Rule 48(c)(8) and, specifically, whether a four-week delay was reasonable under the circumstances of this case.

Abregano argues that in the event of a trial judge's illness or court congestion, the family court has a duty of due diligence to find a replacement judge. Abregano thus argues that it was error for the family court to deny his HRPP Rule 48 motion to dismiss without making any findings as to whether any alternative judges were available. For example, Abregano argues that the family court made no findings that "none of the other twenty-four circuit court judges ... [were] available" or that "a family district court judge could not have been assigned to sit as a family court judge ..." Abregano also argues that even if Judge Castagnetti's illness justified the exclusion of some time

from the Rule 48 period, it did not warrant delay for as long as four weeks.

■ We conclude that although a trial judge's illness may constitute good cause for <u>some</u> period of delay, under the circumstances of this case, where there is an absence in the record of any attempt to find a replacement judge or reassign Abregano's case, there was no good cause to exclude a four-week period.

HRPP Rule 48(b) provides, in part: "the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within six months: (1) from the date of arrest if bail is set or from the filing of the charge, whichever is sooner[.]" HRPP Rule 48(c) describes periods that are excluded from the computation of time for the commencement of trial. These include HRPP Rule 48(c)(2): "periods that delay the commencement of trial and are caused by congestion of the trial docket when the congestion is attributable to exceptional circumstances," and (c)(8): "other periods of delay for good cause."

HRPP Rule 48(c) does not give any guidance on what good cause means, but this court has held that the good cause provision "is provided to take care of unanticipated circumstances," *State v. Gillis,* 63 Haw. 285, 288, 626 P.2d 190, 192 (1981), and that good cause means "a substantial reason that affords legal excuse," *State v. Senteno,* 69 Haw. 363, 368, 742 P.2d 369, 373 (1987) (citing *State v. Estencion,* 63 Haw. 264, at 267, 625 P.2d 1040, at 1043 (1981)). However, "Rule 48(c)(8) is not to be used to excuse a lack of diligence on the part of the government to comply with Rule 48." *Gillis,* 63 Haw. at 288, 626 P.2d at 193.

Although this court has never addressed the question of whether a trial judge's illness is good cause for delay of a trial, we have found good cause for a delay of five months where the defendant was without local counsel following the grant of the defendant's counsel's motion to withdraw. *See Senteno,* 69 Haw. at 368, 742 P.2d at 373. While not a finding of "good cause," this court has also affirmed the exclusion of a period of delay of

ninety-seven days under HRPP Rule 48(c)(2) after finding that a shortage of judges due to two resignations and "a marked increase in jury demands" was a "unique, nonrecurring event," which constituted "exceptional circumstances" under the rule. *See State v. Baron*, 80 Hawai'i 107, 114, 905 P.2d 613, 620 (1995).

This court has found there was not good cause where the prosecutor had an increased workload because, while not anticipated, the increased workload was not reasonably unforeseeable. *State v. Hanawahine*, 69 Haw. 624, at 630–31, 755 P.2d 466, at 469–70 (1988). In addition, there was no good cause where the delay was caused by the State's late filing of the complaint and difficulties in securing the attendance of witnesses, because these were not "unanticipated circumstances." *Gillis*, 63 Haw. at 288, 626 P.2d at 192. There was also no good cause where the State argued that the delay was caused by

> an absence of facilities in Hawai'i County for the police criminalist to conduct a test of the evidence, requiring the evidence to be sent to Honolulu for testing; that the written report of the criminalist was not completed until November 24, 1978, and did not reach the prosecutor until January 3, 1979 .... and a shortage of experienced prosecutors in the Hawai'i County prosecutor's office.

*Estencion*, 63 Haw. at 267, 625 P.2d at 1042.

■ Accordingly, a period is excludable as good cause under HRPP Rule 48(c)(8) if the events causing the delay are unanticipated and not reasonably foreseeable. The illness of a judge such that the court is unavailable is an unanticipated event. Although it may be foreseeable that judges will, on occasion, become ill, when this might happen is generally not reasonably foreseeable.

Courts in other jurisdictions have found that the illness of a trial judge may constitute good cause for delay. *See State v. Hoyt*, 806 P.2d 204, 208 (Utah App.1991) (there was no constitutional violation where the trial was delayed one hundred twenty-four days due, in part, to the judge's illness); *Commonwealth v. Thompson*, 701 A.2d 1367, 1371 (Pa.Super.1997) (a backlog caused by the

judge's illness and a data entry error by the court constituted good cause to justify a delayed sentencing); *Evans v. State*, 742 So.2d 1205, 1208 (Miss.Ct.App.1999) (a continuance due to the judge's illness did not count towards the statutory speedy trial deadline); *Lane*, 561 F.2d at 1078 (there was no abuse of discretion where the court denied a Federal Rules of Criminal Procedure Rule 48(b) motion to dismiss because the delay was due to "institutional factors" such as the "illness of a judge and the unavailability of a replacement"); *Ferris*, 751 F.2d at 441–42 (under the federal Speedy Trial Act, 18 U.S.C. § 3161, "a relatively short period of delay due to a judge's illness ... should be treated as a continuance whether or not a continuance order issues. The delay due to the judge's illness is, therefore, properly excludable time").

We thus conclude that the illness of a trial judge may constitute "good cause" for some period of delay. However, even in the two cases relied upon by the ICA in this case, *Lane* and *Ferris*, there were limitations on the amount of time that could justifiably be excused as "good cause." In *Lane*, for example, the court noted that the delay was justified not just by the judge's illness, but by the judge's illness "and the unavailability of a replacement." *Lane*, 561 F.2d at 1078. Similarly, in *Ferris*, the First Circuit noted that "a relatively short period of time" may be excluded from the speedy trial period due to a judge's illness. Both of these courts thus appeared to recognize that, even if a judge's illness may constitute "good cause" for delay, it is not without limits. We must therefore determine what those limits are, and whether they were exceeded by the delay in this case.

■ Whether a period of time is excludable as "good cause" under HRPP Rule 48(c)(8) is dependent on the facts of each case. *See State v. Herrera*, 63 Haw. 405, 409, 629 P.2d 626, 629 (1981) (" 'Exceptional circumstances,' like 'good cause,' is dependent on the facts of each case. The evidence, based upon all legitimate inferences and deductions, facts admitted or known, and matters which judicial notice may properly be taken, supports [the trial judge's] findings.

Findings of the trial court will not be disturbed unless clearly erroneous."). Similarly, the determination of how long a period can be excluded due to a trial judge's illness is dependent on the facts of each case. As the *Lane* and *Ferris* courts recognized, the delay cannot be indefinite, and it cannot exceed the amount of time necessary for the sick judge to recover, or for an alternative judge to be found.

██ Thus, to determine whether a period of time was properly excluded under HRPP Rule 48(c)(8), a reviewing appellate court must consider several factors.

First, we must consider the reason for the delay and whether it was unanticipated and not reasonably foreseeable. *See, e.g., Gillis,* 63 Haw. at 288, 626 P.2d at 192 (stating that the good cause provision of HRPP Rule 48 "is provided to take care of unanticipated circumstances").

Second, we must consider the period of absence due to the illness of the judge. *See, e.g., Ferris,* 751 F.2d at 441–42 (holding that under the federal Speedy Trial Act, "a <u>relatively short period</u> of delay due to a judge's illness" is "properly excludable time") (emphasis added).

Third, we must consider the efforts taken and stated on the record to find a replacement judge or reassign the case. *See, e.g., State v. Bellah,* 242 Or.App. 73, 252 P.3d 357, 363 (2011) (holding that the trial court erred in denying the defendant's motion to dismiss because the record did not "disclose how the particular length ... of delay was required by the lack of available judges or whether the court or the state made a reasonable effort to reset the case for an earlier trial date"); *State v. Lee,* 234 Or.App. 383, 228 P.3d 609, 612–13 (2010) (illustrating the kind of evidence that is helpful to assess the delays that are due to a lack of available judges: of the possible alternative judges, the record demonstrated that "one judge was screened from the case, one had show-cause hearings scheduled, a third had a doctor's appointment, and a fourth already had a

primary trial scheduled." The court held in part that the defendant's right to speedy trial was not violated because "the reasons for each portion of the delay are well-established in the record.")

Finally, we must consider the complexity of the case and whether it was such that it was not reasonable to ask an alternative judge to step in on short notice. *See, e.g., Williams v. State,* 282 Ga. 561, 651 S.E.2d 674, 677–78 (2007) ("The delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.") (quoting *Barker v. Wingo,* 407 U.S. 514 530–31, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)); *United States v. Murillo,* 288 F.3d 1126 (9th Cir.2002) (holding that the defendant's right to a speedy trial was not violated by a thirteen-month delay given the complexity of the case, which involved an appeal in a complex murder case in which the death penalty was a consideration).

Regarding the first factor, the reason for the delay, we conclude that a trial judge's illness is sufficiently unforeseeable to warrant some period of delay. The issue here is thus how long a delay was warranted, which requires consideration of the other three factors.

The family court ruled that Judge Castagnetti's illness justified an exclusion of a period of four weeks from Abregano's HRPP Rule 48 trial date calculation, extending his trial deadline from February 26, 2013 to March 26, 2013. Judge Castagnetti's illness may have constituted good cause to delay the trial for a few days, even if no action was taken to attempt to find a replacement judge.[6] Here, however, Abregano's trial was delayed for four weeks. The record is silent on whether Judge Castagnetti actually remained ill for that period, but even if she did, when the trial is delayed for that long due to the judge's illness, and the case is not complex, efforts must be made to reassign the case to avoid delay. Abregano's case was not complex enough to warrant waiting four weeks for the same judge to become avail-

---

6. We note that in the present case, on February 11, 2013, Judge Castagnetti continued Abregano's trial for one month, until March 11, 2013. Abregano's HRPP Rule 48 trial deadline was February 23, 2011. Thus, on February 11, 2013, Judge Castagnetti could have continued Abregano's trial for up to twelve days without implicating the HRPP Rule 48 deadline.

able again. This case involved a simple misdemeanor charge with uncomplicated facts and did not involve extensive pre-trial evidentiary motions or hearings.[7] As such, the family court was obligated to make efforts to reassign the case to a different judge.

On March 11, 2013, when the parties appeared before the family court after the one-month continuance due to Judge Castagnetti's illness, the court heard Abregano's arguments regarding his motion to dismiss on HRPP Rule 48 grounds. Abregano argued that a trial judge's illness does not fall under any of the HRPP Rule 48 exceptions, and that the good cause exception did not apply here because there were twenty-one other circuit court judges that could have replaced Judge Castagnetti. The family court rejected Abregano's arguments:

> THE COURT: No. I disagree with you one hundred percent. There are no re-placement judges. And it's just like you guys. When your client shows up and says I want P.D. Stanley who is my attorney, we routinely continue it so that we can protect the procedural rights of the defendant to say, yes, you have an assigned public defender. The court's going to honor that.
>
> If Judge Castagnetti was sick, she was sick. That's not something that happens every day. I think that's good cause. I'm going to rule March, 26, '13 is the Rule 48 date. So we'll pass this case. Put it in the queue.

(Emphasis added).

Thus, the only evidence in the record that any efforts were made to find a replacement judge or reassign Abregano's case was the family court's comment that "[t]here are no

replacement judges." However, rather than demonstrating that efforts had been made to reassign the case, this exchange appears to indicate that no efforts had been made and that the court believed it was under no obligation to make any efforts. The family court compared the situation to that in which proceedings are continued to allow a defendant to be represented by a particular public defender who is temporarily unavailable. However, the illness of a trial judge and the temporary unavailability of a public defender are not analogous. There is no reason, in a non-complex case such as this, that the defendant should have to wait for the same judge to become available beyond the defendant's HRPP Rule 48 trial deadline. Rather, efforts should be made to minimize the trial delay as much as possible by, at minimum, inquiring into the availability of other judges. Further, such efforts should be stated on the record to allow meaningful review on appeal.[8]

Without any additional facts or representations in the record, the family court's statement lacked the necessary basis to support a finding that there were no other judges available. Thus, we conclude that the record is not sufficient to support a finding of good cause to exclude a four-week delay due to the trial judge's illness. As a result, the family court erred in denying Abregano's HRPP Rule 48 motion to dismiss.

### IV. Conclusion

For the foregoing reasons, we vacate the judgment on appeal of the ICA and the family court's judgment of conviction and sentence, and remand the case to the family

---

7. When there has been extensive pre-trial evidentiary rulings by the same judge, this would weigh in favor of excluding a longer period of delay in a HRPP Rule 48 calculation due to the judge's illness.

8. At minimum in this case, the family court should have explained the circumstances that led it to the conclusion that "there are no replacement judges." In cases where this court has affirmed the exclusion of periods of time under HRPP Rule 48 as "exceptional circumstances" due to court congestion, we have required some explanation as to what those circumstances are.

For example, in *Baron*, this court affirmed the circuit court's exclusion of a ninety-seven day period for "exceptional circumstances" because, in denying the Rule 48 motion, the circuit court explained that there was a lack of replacement judges because of "the reassignment of two judges; the retirement of one judge; the temporary reassignment of one judge to another court; the vacations of potential replacement judges; and a marked increase in jury trial demands." 80 Hawai'i at 110, 114, 905 P.2d at 616, 620. However, no such explanation was given in the present case.

court to decide whether to dismiss Abregano's charge with or without prejudice.[9]

## PART II: IMPROPER COMMENT ON THE EVIDENCE

(By: McKENNA, J., with whom POLLACK and WILSON, JJ., join)

The second question in Abregano's application for certiorari asks:

Whether the ICA gravely erred in holding that the [family court] did not assume the role of an advocate for the prosecution and did not exhibit bias when [the family court] improperly commented on the evidence.

■ The dissent states that it is not necessary to reach the second question because we have remanded for a new trial on the first question. The right to an impartial judge is a due process right under article I, section 5 of the Hawai'i Constitution, however, and a judge should not express opinions as to the merits of a case in front of a jury, *State v. Silva*, 78 Hawai'i 115, 117, 118, 890 P.2d 702, 704, 705 (App.1995) (citations omitted), abrogated on other grounds by *Tachibana v. State*, 79 Hawai'i 226, 900 P.2d 1293 (1995). In addition, it is not unusual for our appellate courts to provide guidance on remand. *See, e.g., State v. Basham*, 132 Hawai'i 97, 112, 319 P.3d 1105, 1120 (2014) (providing guidance on remand regarding claims of prosecutorial misconduct); *Nelson v. Univ. of Haw.*, 97 Hawai'i 376, 385 n. 6, 38 P.3d 95, 104 n. 6 (2001) (addressing evidentiary issues to provide guidance to the court on remand); *State v. Pacheco*, 96 Hawai'i 83, 88, 26 P.3d 572, 577 (2001) (vacating conviction and remanding for new trial based on prosecutorial misconduct and addressing additional issues on erroneously admitted evidence, ineffective assistance of counsel, and choice of evils defense "[i]n order to provide guidance to the circuit court and the parties on remand...."); *State v. Davia*, 87 Hawai'i 249, 252, 953 P.2d 1347, 1350 (1998) (vacating conviction and remanding for new change of plea hearing based on district court's failure to establish that defendant's plea was know-

ing and voluntary, but addressing defendant's remaining points of error "in order to provide guidance to the district court and the parties on remand").

■ We therefore address the second question. The trial transcript passage in Section I(B) provides the background:

[STATE]: Okay. Um, what did [Judge Kupau]—what did he tell you and the defendant about contact between parties?

[DEFENSE COUNSEL]: Objection. Hearsay. This is hearsay.

THE COURT: Mr. Prosecutor, does the document not speak for itself? It is in evidence.

[STATE]: All right. Um, then let's specifically address Points 3 and Points 4 in Section 3B—

THE COURT. All right.

[STATE]:—'cause that deals with contact between parties.

[STATE]: [KA], um Section 3 says[,] "The respondent is prohibited from coming or passing within 100 yards of any residence or place of employment or school of the petitioner. The respondent must not violate this order even if the petitioner invites the respondent over."

[DEFENSE COUNSEL]: Objection. Is that a question?

THE COURT: I think that is part of the question. So overruled at this time.

[STATE]: Do you remember Judge Kupau going over that portion of Point 3B3 with you in open court and the defendant in open court?

[KA]: Yes.

[STATE]: Okay. Now does 3—did he tell you 3B3, that section that I just read to you, does that apply—did he tell the defendant and you that that applies only to you or to—I mean—or to you and the other people covered under the order of protection?

[DEFENSE COUNSEL]: Objection. Hearsay.

THE COURT: Okay. Sustained.

---

9. "[T]he court shall, on motion of the defendant, dismiss the charge, <u>with or without prejudice in its discretion,</u> if trial is not commenced within

six months." HRPP Rule 48(b) (emphasis added).

[STATE]: Okay. For the contact between parties section, did Judge Kupau say that it went over—that it covers both—just you or you and the other people on the order for protection?

[DEFENSE COUNSEL]: Objection. Hearsay.

THE COURT: Sustained.

[STATE]: Okay.

THE COURT. Mr. Prosecutor, isn't this covered on Page 1 of Exhibit 1?

[STATE]: Okay.

THE COURT: No, I'm just asking. I don't mean to preempt your questioning, but isn't it covered on Page 1?

[STATE]: Yes. Yes, Your Honor. You are correct.

THE COURT: Well, it's in evidence. If you want to ask her who's covered, I think you can publish that portion of the exhibit which is in evidence if you desire.

[STATE]: Okay. So just to be clear, um, [KA], in addition to yourself as the petitioner that's covered under this order for protection, um, again, there's three other people covered under this order; right?

[DEFENSE COUNSEL]: Objection. Leading.

THE COURT: Overruled.

[KA]: Yes.

[STATE]: Okay. So then who are those three people in addition to yourself covered under this order?

[KA]: Uh, my daughter [HP], uh, my son . . . and our youngest daughter. . . .

[STATE]: Okay. Thank you, [KA].

In front of the jury, in the passage quoted above, the family court suggested that the State was correct in arguing that Abregano could be found to have violated Sections III(B)(3) and III(B)(4) of the protective order because "isn't this covered on Page 1 of Exhibit 1."

This suggestion by the family court was an improper comment on the evidence under Hawai'i Rules of Evidence ("HRE") Rule 1102 (1993), which provides that "[t]he court

shall instruct the jury regarding the law applicable to the facts of the case, but shall not comment upon the evidence." We have observed that "the Commentary on Rule 1102 unequivocally states that the present rule precludes comment on the evidence in all cases, without limitation." *State v. Hauge*, 103 Hawai'i 38, 59, 79 P.3d 131, 152 (2003) (internal brackets, quotation marks, and emphasis deleted). Thus, the prohibition against judicial comment on the evidence applies throughout the proceedings and is not limited to jury instructions.[10] *Id.* The rationale for HRE Rule 1102 is that judicial comment on the evidence risks placing the judge in the role of an advocate, and that analysis of the evidence is an advocate's function. Addison Bowman, *Hawai'i Rules of Evidence Manual* § 1102–1 (2014); *State v. Nomura*, 79 Hawai'i 413, 417, 903 P.2d 718, 722 (App. 1995).

The record does not support Abregano's assertion, however, that the family court's improper comment was based on the court assuming the role of an advocate for the prosecution or that it constituted an exhibition of bias; rather the record suggests that the family court's improper comment was based on a misunderstanding of what was prohibited by the protective order. For example, in denying Abregano's motion for judgment of acquittal, the family court stated its belief that "other protected persons stand in the same shoes as the petitioner[.]" Contrary to the family court's commentary before the jury and its statement during its ruling on the motion for judgment of acquittal, under the protective order, other protected persons do not stand in the same shoes as the petitioner, and Sections III(B)(3) and III(B)(4) do not apply to conduct between Abregano and HP.

A redacted copy of the protective order is attached to this concurring opinion as "Attachment 1," with redactions noted in brackets. The protective order identifies Abregano as the "Respondent." In and below the caption, it refers to KA as the "Petitioner," giving the "Year of Birth" of the "Petitioner."

---

10. The family court later explained that "the court was commenting on a document that was already received into evidence," and that, "[t]he court was facilitating the use of this document for a witness who was on the stand."

Below the "PETITIONER IDENTIFIERS" on the first page, HP is included as an "Other Protected Person" with a "YOB" or "Year of Birth." Below the "Other Protected Person" information, the protective order identifies "Respondent's Relationship to Petitioner" as "MARRIED." Obviously, this cannot be HP.

The protective order is replete with additional references to the "Petitioner" that make it clear that the only "Petitioner" is KA. For example, persons present at the court hearing on the protective order are identified at the top of page 2, and notes that "Petitioner" was present. HP was not at the hearing. Section III(D)(1) regarding "Temporary Custody and Visitation" provides that the "Petitioner" shall have temporary legal and physical custody of the parties' minor children.

 The State asserts that Abregano violated Sections III(B)(3) and (4) of the protective order by contacting HP, and before the jury, the family court suggested that the State's assertion was correct. These sections, however, only prohibit conduct by Respondent as to the "Petitioner," or KA. A review of the protective order makes clear that the "Petitioner" is KA, and HP is an "Other Protected Person." The protective order's only prohibition on conduct between Abregano and HP appears in Section III(B)(8), which prohibits Abregano from "contacting" HP.

 As this court recently reiterated in *State v. Guyton*, 135 Hawai'i 372, 351 P.3d 1138 (2015), a case alleging a violation of a district court restraining order:

> [A] prerequisite to punishing a person for violating an injunction order . . . is a court order that is "clear and unambiguous," so as to allow a person of ordinary intelligence to "ascertain from the four corners of the order precisely what acts are forbid-

den[.]" This requirement is no more than a rule of reason because, as it is for statutes, fairness and due process dictate that a court order must be sufficiently particular and definite so as to clearly identify the conduct that it prohibits.

135 Hawai'i at 377–78, 351 P.3d at 1143–44 (citations omitted).

Thus, in addition to making an improper comment on the evidence, the family court erred in suggesting before the jury that the State correctly asserted that Abregano could be found to have violated Sections III(B)(3) and III(B)(4) of the protective order and in stating during its ruling on Abregano's motion for judgment of acquittal that "other protected persons stand in the same shoes as the petitioner in this case." The record indicates, however, that the family court's improper comment before the jury was based on a mistaken understanding of what was prohibited by the protective order. As a remand has already been ordered for the Rule 48 violation, we need not address whether any remedy is necessary for the improper comment.[11]

## DISSENTING OPINION TO PART II

(By: RECKTENWALD, C.J., with whom NAKAYAMA, J., joins)

Respectfully, I dissent from Part II.

In his application for writ of certiorari, Defendant Scott Abregano asked this court to vacate his conviction on several grounds. First, Abregano argued that Hawai'i Rules of Penal Procedure (HRPP) Rule 48 was violated since he was not brought to trial within the 180 days required by the rule. Second, Abregano argued that comments made by the family court when the State questioned Abregano's wife KA regarding the terms of the protective order constituted improper commentary on the evidence.[1]

---

**11.** We therefore do not consider the extent of the prejudice by the improper comment on the evidence, although we note that Communication No. 1 from the jury inquired as follows: "Does the term 'Petitioner' include the 'Petitioner Identifiers' on page 1 of Exhibit 1? We also do not address the sufficiency of the evidence as this issue was not raised on appeal. *See State v.*

*Davis*, 133 Hawai'i 102, 120, 324 P.3d 912, 930 (2014) ("[A] reviewing court is required under article I, section 10 of the Hawai'i Constitution to address a defendant's express claim of insufficiency of the evidence prior to remanding for a new trial based on a defective charge.").

**1.** Abregano also raised the question of whether the ICA erred in holding that the trial court

The first issue, which is addressed in Part I, is dispositive. Accordingly, I would not reach the second issue, which is addressed in Part II.

The Majority suggests that it is not unusual for our appellate courts to provide guidance on remand. That said, Part II has the practical effect of precluding the State from relying on Sections III(B)(3) or (4) of the protective order when Abregano is retried. Notably, Abregano moved for a judgment of acquittal challenging the sufficiency of the evidence with regard to those sections. The

family court denied the motion, and Abregano did not raise this issue in his appeal to the ICA or to this court. Thus, I do not believe we should address the issue here.

For the foregoing reasons, I respectfully dissent from Part II.

properly precluded him from presenting a member of the jury as a witness in support of his motion for a new trial, as he hoped to establish that an outside influence was present during jury deliberations. Because the first issue is disposi-

tive of this appeal, there is no need to address this contention. *See United Pub. Workers, AFSCME, Local 646, AFL–CIO v. Hanneman*, 106 Hawai'i 359, 360, 105 P.3d 236, 237 (2005), *as corrected* (Mar. 28, 2005).